**Melvin MIKES, Petitioner–Appellant,**

v.

**Robert G. BORG, Warden; Attorney General of the State of California, Respondents–Appellees.**

No. 90–55247.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1990.

Decided Oct. 7, 1991.

---

Fern M. Laethem, State Public Defender, Michael Tanaka, Jill Ishida, Deputy State Public Defenders, Los Angeles, Cal., for petitioner-appellant.

John K. Van de Kamp, Atty. Gen. of State of Cal., Richard B. Iglehart, Chief Asst. Atty. Gen., Edward T. Fogel, Jr., Asst. Atty. Gen., David F. Glassman (argued), Donald F. Roeschke, Deputy Attys. Gen., Los Angeles, Cal., for respondents-appellees.

Before D.W. NELSON and REINHARDT, Circuit Judges, and TANNER, Senior District Judge.*

REINHARDT, Circuit Judge:

Melvin Mikes, a California state prisoner, appeals the district court's order dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a trial by jury, Mikes was convicted of murder in the first degree [1] and commission of an offense with the use of a deadly or dangerous weapon, and was sentenced to state prison for 25 years to life. The California Court of Appeal affirmed the judgment and the California Supreme Court denied Mikes' petition for review without explanation or citation of authorities. Mikes contends on habeas review that the inculpatory evidence, which consisted exclusively of fingerprint evidence, was insufficient to support his conviction. We agree.

## I. Facts

On March 10, 1980, Harold Hansen was found dead in the basement of his fix-it shop, with the pockets of his clothing turned inside out. The shop, which was located on the main floor of the building, had been burglarized. Near Hansen's body, police investigators found three chrome posts—a three-foot post, a six-foot post, and a "turnstile" post—all of which constituted portions of a disassembled turnstile unit.[2] Hansen had purchased the turnstile (in assembled or disassembled form) at a hardware store's going out-of-business sale, approximately four months prior to his death.[3] The investigators determined that the assailant used the three-foot post to murder Hansen.

The government's case against Mikes rested exclusively upon the fact that his fingerprints were among those found on the posts that lay adjacent to the victim's body. The officers lifted a total of 46 fingerprints from the area designated as the crime scene. Of the 16 fingerprints that were identifiable, the police determined that six belonged to Mikes and ten did not. Thirty were not sufficiently clear to permit identification of the source. In particular, the government introduced evidence that five "consecutive" prints were found on the three-foot post—the murder weapon. The prosecution's expert testified

---

* Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation.

1. Mikes was charged with and convicted of first degree murder because he allegedly committed the murder during the course of a burglary. The burglary allegation was the sole criterion for the determination of the degree of murder.

2. Officer John Miller, one of the investigating officers in Hansen's death, testified that the posts were of "the type that are in grocery stores where they have the short three-foot pipes, then the longer ones to designate a particular area

people should go ... [and] the actual turnstile, the bar with several bars sticking out." There is no evidence in the record that the posts came from more than one turnstile unit. The defense argues in its brief on appeal, as it did below, that they were all part of a single turnstile. In its responsive brief, the prosecution does not take issue with that contention.

3. There is no evidence in the record as to whether the turnstile was assembled or disassembled at the time it was purchased by Hansen. Robert Grant, a friend of Hansen's, testified that he first saw the pipes in their disassembled state after Hansen had placed them in his basement.

that he identified the first and fourth of the consecutive prints as Mikes' right forefinger and right little finger, respectively. The remaining three prints on the murder weapon were unidentifiable. Three of fifteen prints found on the six-foot post, and one of two prints from the "turnstile" post belonged to Mikes. Other unidentifiable prints were also found on these posts. None of the prints taken from the fix-it shop area, where the police discovered a number of empty jewelry boxes strewn about, or from the jewelry boxes themselves, or from the stair rail leading to the basement, was identified as Mikes'.[4] In fact, none of the fingerprints found anywhere on the premises except on the posts was identified as Mikes'.

## II. Standard of Review

■■■ We review *de novo* a district court's decision to deny a petition for writ of habeas corpus. *Barker v. Estelle*, 913 F.2d 1433, 1437 (9th Cir.1990). However, in reviewing the question whether the evidence was sufficient to sustain Mikes' conviction, we, like the district court, must view that evidence in the light most favorable to the government and determine whether on that basis any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Newton v. Superior Court of California*, 803 F.2d 1051, 1058–59 (9th Cir.1986), *cert. denied*, 481 U.S. 1070, 107 S.Ct. 2464, 95 L.Ed.2d 873 (1987). A conviction that fails to meet the *Jackson* standard violates due process and entitles the convicted defendant to habeas relief. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789 ("We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 ... the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof beyond a reasonable doubt.") (footnote omitted); *Newton*, 803 F.2d at 1058.[5]

## III. Analysis

■■■ The critical question presented by this case is whether the evidence of Mikes' fingerprints on three posts, one of which was identified as the murder weapon, is sufficient *by itself* to allow a rational trier of fact to convict him of murder. The prosecution's case rested exclusively on the theory that Mikes' fingerprints were impressed on these objects *during the commission of the crime*. We have held that fingerprint evidence alone may under certain circumstances support a conviction. *United States v. Scott*, 452 F.2d 660, 662 (9th Cir.1971). However, in fingerprint-only cases in which the prosecution's theory is based on the premise that the defendant handled certain objects *while committing the crime in question*, the record must contain sufficient evidence from which the trier of fact could reasonably infer that the fingerprints were in fact impressed at that time and not at some

---

4. With respect to the unidentifiable prints in the sales area, on the jewelry boxes and on the stair rail, the government expert stated that he made no effort to determine whether Mikes could be eliminated as a possible source of those prints. As a result, we do not know whether all or some of those unidentifiable prints were sufficiently clear to determine if they did *not* belong to Mikes. However, the government expert witness did testify that with respect to the unidentifiable prints on the posts he did undertake such an examination. He concluded that, with the exception of one print on the "turnstile" post, which clearly did not belong to Mikes, he could not determine whether or not those prints belonged to Mikes or some other individual(s).

5. The standard of review for cases addressing the sufficiency of the evidence is identical for direct appeals and habeas review. *See, e.g., United States v. Talbert*, 710 F.2d 528, 530 (9th Cir.1983) (per curiam) ("We review the evidence produced against [the appellant] in the light most favorable to the government to determine whether substantial relevant evidence was produced from which the jury could reasonably have found [appellant] guilty beyond a reasonable doubt.") (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979), and *United States v. Miller*, 688 F.2d 652, 663 (9th Cir.1982)). Thus, the insufficiency of the evidence cases, such as *Talbert* and *Borum v. United States*, 380 F.2d 595 (D.C.Cir.1967), which we discuss *infra* and which were decided on direct appeal, are directly applicable here.

**357**

earlier date. *See United States v. Talbert,* 710 F.2d 528, 530–31 (9th Cir.1983); *United States v. Lonsdale,* 577 F.2d 923, 926 (5th Cir.1978); *United States v. Van Fossen,* 460 F.2d 38, 41 (4th Cir.1972); *Borum v. United States,* 380 F.2d 595 (D.C.Cir. 1967).[6] In order to meet this standard the prosecution must present evidence sufficient to permit the jury to conclude that the objects on which the fingerprints appear were inaccessible to the defendant prior to the time of the commission of the crime. *See Talbert,* 710 F.2d at 530–31.[7]

▪ Here, the prosecution introduced no evidence placing the defendant at the scene of the crime—either on the day of the murder or on any other occasion. Nor did the prosecution find any items stolen from the deceased in Mikes' possession. Nor, unlike *Scott,* the one case in which we upheld a conviction based on fingerprint evidence alone, did the defendant's fingerprints appear on any recovered stolen property. Finally, none of the fingerprints found on any of the objects located in the area actually burglarized, the fix-it shop itself, was identified as Mikes'. The *only* evidence that the prosecution introduced to tie Mikes to the murder, or the burglary, was his fingerprints found on several posts of a disassembled turnstile—one of which posts served as the murder weapon— bought by the decedent four months prior to his death, and kept in the basement. The issue in this case is whether that fingerprint evidence, standing alone, is sufficiently probative to allow a reasonable juror to conclude beyond a reasonable doubt that Mikes committed the murder. While the government need not exclude all inferences or reasonable hypotheses consistent with innocence, *United States v. Miller,* 688 F.2d 652, 663 (9th Cir.1982) (citation

omitted); *Borum v. United States,* 380 F.2d 595, 597 (D.C.Cir.1967), the record must contain sufficient probative facts from which a factfinder could reasonably infer a defendant's guilt, under the beyond a reasonable doubt standard. In cases such as the one before us, there must, at the very least, be sufficient evidence in the record to permit the factfinder to determine *when* the fingerprints were impressed; otherwise, any conviction would be based on pure speculation. *Borum,* 380 F.2d at 597. Here, the government's theory of the case rests on the premise that Mikes' fingerprints were placed on the posts at the time the crime was committed. Accordingly, we must examine the record to determine whether the fingerprint evidence is sufficiently probative to warrant the conclusion by a reasonable factfinder that the prints were placed on the posts at the time of the murder.

▪ The government argues that the posts were inaccessible to the petitioner because they were kept in Hansen's basement, a location from which Hansen excluded the general public, and which Mikes did not have permission to enter. The government's argument falls far short of showing the inaccessibility of the posts to Mikes. Mikes' conviction cannot be upheld unless the record shows that the objects in question were inaccessible to him during the "relevant time." The "relevant time" is defined as the time prior to the commission of the crime during which the defendant reasonably could have placed his fingerprints on the object in question *and* during which such prints might have remained on that object. We must examine, in each case, the circumstances surrounding the custody or location of the object, as well as its function, the accessibility of the

6. In *Talbert,* we stated that *Borum* and its progeny are applicable in cases where fingerprint evidence is the only evidence linking the defendant to the crime. *See Talbert,* 710 F.2d at 531. *Borum* initially set forth the rule that, in cases where the only link between the defendant and the crime is fingerprint evidence found at the scene of the crime, the prosecution must present evidence sufficient to support an inference that the fingerprints were placed on the object(s) in

question during the commission of the crime. *Borum,* 380 F.2d 595 (D.C.Cir.1967).

7. From a practical standpoint, this evidentiary showing is even more critical in cases, like the one before us, in which fingerprints other than the defendant's, or unidentifiable prints, also appear on the murder weapon; however, the showing is essential even when it is only the defendant's prints that appear on a particular item. *See Borum,* 380 F.2d at 596.

object to the defendant, and the extent to which the object was or could have been handled by others. As we consider whether the record is sufficient to warrant the inference that Mikes did not have access to the posts during the relevant period, our inquiry must center on the specific facts regarding these circumstances; in this connection, we must carefully examine both generally and specifically the nature and character of the fingerprint evidence at issue, particularly with respect to the question of durability.

 While the prosecution did not offer any evidence regarding the age of the fingerprints found on the posts, the defense expert testified that fingerprints can last indefinitely. This is consistent with the testimony of government experts in other cases. *See, e.g., United States v. Corso,* 439 F.2d 956, 957 (4th Cir.1971); *United States v. Collon,* 426 F.2d 939, 941 (6th Cir.1970); *Borum,* 380 F.2d at 596. Given that the undisputed record shows that fingerprints may last indefinitely, we must next examine the custody, location, and function of the objects involved—i.e., the turnstile posts—to determine whether Mikes' prints, if impressed at an earlier date, reasonably could have remained intact until the time of the murder. Hansen purchased the posts at a hardware store's going-out-of-business sale, approximately four months before his murder. After the purchase, he placed the posts in his basement; the posts remained there until his death. The record shows that the base-

ment area was inaccessible to the general public. The fact that Hansen did not allow the general public to enter into the basement area for the four month period preceding the commission of the crime does not, however, help the prosecution. To the contrary, it suggests that prints placed on the posts prior to Hansen's purchase of them and still on them at the time of the acquisition are likely to have remained undisturbed during the time the posts were in Hansen's possession. Therefore, the relevant period in this case is the time immediately preceding the four month period during which Hansen had custody of the posts. The question, becomes, then, whether there is a reasonable possibility that Mikes could have impressed his prints on the posts in the period preceding their purchase by Hansen, or, to put it more accurately, whether the record contains sufficient evidence that the posts were inaccessible to Mikes during that period.[8]

The testimony in the record establishes that Mikes' fingerprints were found on "ordinary" turnstile posts—the type often used in public places, such as a grocery or other commercial store. Immediately prior to Hansen's purchase, the posts were offered for sale in a hardware store as part of its going-out-of-business sale. For some indeterminate period prior to the store's offering them for sale, the posts presumably were used for their ordinary purpose and were accessible to the general public, as parts of an operating turnstile unit. The evidence in the record is wholly insuffi-

8. In *Stevenson v. United States,* 380 F.2d 590 (D.C.Cir.1967), decided the same day as *Borum* (and, incidentally, involving the same defendant as *Borum* ) the government introduced fingerprint evidence showing that the defendants had, at some time, touched objects found at the scene of the crime. The court held that testimony that the two objects in question had been purchased by the owner five and twelve years before the commission of the offense, respectively, and had been kept in his home during that entire period was sufficient to show that they were inaccessible to the defendant. In *Stevenson,* it was, of course, only reasonable for a factfinder to conclude that during the five and twelve year periods the objects would have been handled by a number of persons and any fingerprints impressed prior to the commencement of those periods would have been obliterated. By

contrast, the record here accounts for Hansen's custody of the posts for only a four month period. The posts were kept in a basement where they were unlikely to have been handled by anyone other than Hansen and then only occasionally, at most. There is no reason to believe that Hansen's handling of the posts would have obliterated all pre-existing prints and no evidence that some of the unidentified prints in the posts did not belong to someone other than Hansen or Mikes. Under these circumstances, given the nature and function of the posts and their location prior to Hansen's purchase, as well as the durability of fingerprints, the showing that the posts were inaccessible to the defendant for a four month period is insufficient to permit the inference that they were inaccessible to him during the relevant period.

cient to preclude the reasonable possibility that Mikes' fingerprints were placed on the posts during the period prior to Hansen's acquisition of them. To the contrary, it establishes that the posts were fully accessible to the general public, including Mikes, during that period and that Mikes' fingerprints could well have been placed on the posts prior to Hansen's purchase of them. Specifically, Mikes could have handled the posts while they were in the hardware store, either in their assembled or disassembled form. Under the evidence presented, the fingerprints in question could have been placed on the posts by a person who disassembled the turnstile, a person who sold the turnstile to Hansen, or any person who considered buying the turnstile prior to Hansen's acquisition. It is also possible, though less likely, that the fingerprints could have been impressed on the posts on the last occasion on which the turnstile was in general use, either in the hardware store or elsewhere.[9]

▮ In order to support a finding that Mikes is guilty beyond a reasonable doubt, the record must demonstrate that he in fact touched the posts at the time the crime was committed and not at some earlier point. Under our judicial system, the defendant has no duty to explain the presence of his

fingerprints. *Borum*, 380 F.2d at 597 n. 11. Likewise, he is under no obligation to illuminate any inferences from the fingerprint evidence that are consistent with his innocence. To put it more directly, the defendant need not explain how or when his fingerprints were placed on the object in question; that burden lies elsewhere. *Id.* at 597. On the basis of the record before us, a reasonable factfinder could not conclude beyond a reasonable doubt that Mikes' fingerprints were placed on the turnstile posts at the time of the commission of the crime. There is insufficient evidence to warrant that conclusion rather than the conclusion that the fingerprints were impressed on the posts at an earlier time. There is, in short, a total failure of proof on the "accessibility" question.

The government argues that this case is similar to *United States v. Scott*, 452 F.2d 660 (9th Cir.1971), the only reported case in which we have upheld a conviction that was based on fingerprint evidence alone. *Id.* at 662.[10] We find that case clearly distinguishable. Scott was convicted of one count of entering a federal savings and loan association with the intent to commit a felony therein, and one count of taking and carrying away with the intent to steal, certain money and property of a federal sav-

9. The government's expert also stated that the five consecutive prints were in a "grasping-type" pattern. The government contends that this evidence provides additional support for the conclusion that Mikes used the post to murder Hansen. The argument has little persuasive force, however, because only two of the five prints were identified as Mikes and the police fingerprint experts did not find any palm or thumb prints belonging to Mikes on the post. More important, people generally grasp turnstile posts while using them for the purpose normally intended, or in connection with any of the functions discussed above. Therefore, the "grasp" does not tend to support the theory that the person whose fingerprints reflected the act of grasping used the post in a violent fashion.

10. In *Talbert*, 710 F.2d 528 (9th Cir.1983), and *United States v. Crenshaw*, 698 F.2d 1060, 1064 (9th Cir.1983), we reaffirmed the rule that, under certain circumstances, fingerprint evidence alone may sustain a conviction. *Talbert* and *Crenshaw*, however, were not "fingerprint only" cases. In *Talbert*, we pointed out that the facts in that case were "wholly unlike those cases in

which only fingerprint evidence links a defendant to the crime." *Talbert*, 710 F.2d at 531. In addition to introducing evidence of the defendant's fingerprints on the murder weapon, the prosecution in *Talbert* showed that the defendant knew the victim, had a history of drug transactions with him, and knew that he kept large sums of money in a money belt. *Id.* The jury in *Talbert* also "heard testimony concerning appellant's 'joke' that he would not mind 'bumping [the victim] on the head' as well as his ambiguous remark later that he would 'pay [the victim] back when [he] got [his] hands on him.'" *Id.*

The conviction in *Crenshaw* also did not hinge solely upon fingerprint evidence. To the contrary, in *Crenshaw* we stated that the evidence of three clear fingerprints left by one of the robbers at the bank provided "additional" evidence of the defendant's guilt. *Crenshaw*, 698 F.2d at 1064. We speculated, but did not decide, that this evidence alone *might* have been sufficient to sustain the defendant's conviction—i.e., if the other considerable evidence had not been introduced. That speculation, however, falls far short of a legal conclusion.

ings and loan association. We held that the *combined* fingerprint evidence presented at trial was sufficient to prove that the defendant had committed these crimes. The defendant's prints were found not only on a battery inside a flashlight left at the scene of the crime, but also on a blank check and travelers checks stolen from the association, both forms of checks having been inaccessible to the defendant prior to the offense. *Id.* We observed that "[t]he identification of the defendant's fingerprints upon one battery inside the flashlight might well have been insufficient circumstantial evidence to survive a motion for acquittal." *Id.* However, we concluded that "when that evidence is combined with positive fingerprint evidence upon the Association's stolen check and its stolen travelers checks, the ring of circumstantial evidence tightens around the defendant." *Id.* The facts that the defendant's prints were found on the flashlight left at the scene of the crime *and* that they were found on the *previously inaccessible* stolen property constituted more than sufficient proof that the defendant entered the savings and loan association and stole the checks.

*Scott* is obviously an entirely different case from the one before us. *Scott* does not depend upon a showing that the defendant's fingerprints were impressed upon the objects *at the time of the commission of the crime.* Indeed, in *Scott* the defendant may well have left his fingerprints on the battery long before entering the savings and loan institution; likewise, if the defendant wore gloves during the theft (or even if he did not but had co-conspirators), his fingerprints may have been impressed on the stolen checks some time after the crime was committed. The combination of the showing that defendant's property was found at the scene of the crime and that the defendant had handled checks stolen from the association during *or after* their theft provided a sufficient basis upon which a jury could reasonably have inferred that the accused committed the

crimes. Unlike in *Scott*, the prosecution in the case before us presented no evidence that Mikes' prints were found on the allegedly stolen property. Nor did the prosecution in the case before us offer sufficient evidence that the property on which Mikes' fingerprints were found was previously inaccessible to him. Finally, none of the property containing Mikes' prints was property which was brought to and left at the crime scene during the commission of the offense. Thus, *Scott* is different from the case before us in almost every material respect.

On the basis of similar, and perhaps more probative, evidence than is presented here, other circuits have concluded that fingerprint evidence is insufficient to support a conviction in the absence of an adequate showing that the fingerprints could have been impressed only at the time of the crime. In *Borum v. United States*, 380 F.2d 595 (D.C.Cir.1967), the prosecution introduced evidence that four fingerprints taken from empty jars that had contained a coin collection were the defendant's and that the defendant was within a mile and a half of the victim's home during at least a part of the time period within which the crime was committed. The D.C. Circuit concluded that this evidence was insufficient to sustain the defendant's conviction for housebreaking because there was no direct or circumstantial evidence indicating that the defendant touched the jars in the course of the housebreaking. *Id.* at 596–97.[11] In *United States v. Van Fossen*, 460 F.2d 38 (4th Cir.1972), evidence of the defendant's thumbprints on two photographic negatives and one engraving plate was held insufficient to sustain his conviction of possessing plates with intent to use them in counterfeiting federal reserve notes. The Fourth Circuit held that the conviction rested on conjecture and suspicion, since there was "no evidence in the record [that] suggest[ed] that the prints were impressed when the crime was committed ..." *Id.* at 41. In *United States v. Collon*, 426 F.2d

---

**11.** In another appeal decided the same day, the D.C. Circuit affirmed Borum's conviction for an unrelated incident of housebreaking and rob-

bery on the basis of fingerprint evidence. *See Stevenson v. United States*, 380 F.2d 590 (D.C.Cir.1967), discussed *supra* at note 8.

939 (6th Cir.1970), the Sixth Circuit concluded that the defendant's conviction for bank robbery could not be sustained on the basis of evidence that the defendant's finger and palm prints were on a map, marked with the location of the robbed bank, found inside the getaway car. The court stated that "the mere presence of this map in the getaway car did not place the defendant ... in the car at the scene of the robbery, or for that matter at any other time. The map could have been innocently handled by him months before the robbery and found its way into the car in any number of ways without his participation or knowledge." *Id.* at 941–42. In *United States v. Lonsdale,* 577 F.2d 923 (5th Cir.1978), the defendant was convicted of unlawfully uttering a United States Treasury check, primarily on the basis of a fingerprint expert's testimony that the defendant's left thumb print matched a latent print lifted from the back of the check. *Id.* at 924–25. The Fifth Circuit reversed his conviction because there was no evidence tending to show that the defendant's print was impressed on the check during the course of uttering it. *Id.* at 926.

 The clear principle arising from the cases decided by our fellow circuits is that, in a case resting upon the premise that the defendant impressed his fingerprints on an object at the time of the commission of the crime and supported solely by evidence that the defendant's fingerprints were found on that object, the record must contain sufficient evidence to permit a jury, applying the beyond a reasonable doubt standard, to draw the inference that the defendant touched the object *during the commission of the crime.* That is a principle that we have ourselves acknowledged on more than one occasion, *see Talbert,* 710 F.2d at 530–31 (9th Cir.1983); *Scott,* 452 F.2d at 662 (9th Cir.1972), and that we reiterate today. Accordingly, in the case before us, the evidence in the record must be sufficient to justify a reasonable factfinder's conclusion that the posts were not accessible to the defendant during the relevant period (here, the period shortly before Hansen's acquisition of them). The record falls far short of meeting that standard.

As the court said in *Borum,* "to allow this conviction to stand would be to hold that anyone who touches anything which is found later at the scene of a crime may be convicted." *Borum v. United States,* 380 F.2d 595, 597 (D.C.Cir.1967). Regardless of Mikes' actual guilt or innocence, we decline to establish a precedent that would permit such a result. Any determination that Mikes' fingerprints were left on the posts during the commission of the offense is unreasonably speculative.

### CONCLUSION

We do not purport to set forth a rule specifying the precise quantum of fingerprint evidence needed to sustain a conviction. But, in a case in which the prosecution's theory is that the defendant's fingerprints were placed on the murder weapon at the time of the commission of the crime or were left at the scene of the crime during its commission, the record must show that the object was inaccessible to the defendant or that the defendant did not have access to the crime scene, during the relevant period prior to the crime's commission. The prosecution here rested its case upon the theory that Mikes' fingerprints were placed on the murder weapon at the time the crime was committed; however, the record fails to establish that the turnstile posts were inaccessible to him during the relevant period preceding the commission of the offense. We therefore hold that Mikes' conviction violated his right to due process. Accordingly, the judgment of the district court is reversed and the case is remanded to that court with instructions to grant the writ of habeas corpus.

REVERSED and REMANDED.