February 8, 1996 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT



No. 95-1379

DEREK WESLEY HALL,

Petitioner, Appellant,

v.

PAUL DiPAOLO, SUPERINTENDENT,
MASSACHUSETTS CORRECTIONAL INSTITUTION - NORFOLK,

Respondent, Appellee.



ERRATA SHEET ERRATA SHEET

The opinion of this Court issued on January 3, 1996, is
amended as follows:

Insert footnote 2 after the word "unsmudged," 4th line from
the bottom of page 5, as follows:

2. Strictly, the exhibit showing the print was not
made part of the record, and the witness who testified
to its characteristics did not speak as to non-
smudging. His testimony as to details, however,
clearly warranted such a finding. Since defendant's
constitutional claim requires a showing that the
evidence did not warrant the conviction, this factual
issue must be resolved against defendant.

UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT


No. 95-1379

DEREK WESLEY HALL,

Petitioner, Appellant,

v.

PAUL DiPAOLO, SUPERINTENDENT,
MASSACHUSETTS CORRECTIONAL INSTITUTION - NORFOLK,

Respondent, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge] 



Before

Selya, Circuit Judge, 

Aldrich, Senior Circuit Judge, 

and Cyr, Circuit Judge. 



Richard B. Klibaner with whom Klibaner & Sabino was on brief for 
appellant.
William J. Meade, Assistant Attorney General, with whom Scott 
Harshbarger, Attorney General, was on brief for appellee. 



January 3, 1996


ALDRICH, Senior Circuit Judge. Defendant Derek 

Wesley Hall, having been convicted in the Commonwealth's

court for armed robbery in violation of M.G.L. c. 265, 17,

was found guilty at a bench trial following the denial of his

motion for acquittal. After exhausting his state appeals he

petitioned for a writ of habeas corpus on the ground that the

evidence was insufficient to support his conviction for lack

of identification. The district court denied the writ.

Having reviewed the record de novo, Scarpa v. Dubois, 38 F.3d 

1, 8 (1st Cir. 1994), cert. denied, U.S. , 115 S.Ct. 

940, 130 L.Ed.2d 885 (1995), we affirm.

The facts, as far as they were established at

trial, may be briefly stated. Harvard Square Cleaners,

Harvard Square, Cambridge (hereinafter the store), is a small

establishment that receives clothes from customers for

cleaning, sends them out to clean, and ultimately returns

them to customers upon receiving payment. On May 9, 1989,

the sole employee was Carmel Mhodhrain, who worked, alone,

from 7:00 a.m. to 7:00 p.m. She testified she had been

working there for some seven months. At about 4:00 p.m. a

man she had never seen before entered the otherwise empty

store. She could say no more than that he was black, of

medium height, slender, with black hair and was wearing blue

jeans and a black sweater. After inquiring about having his

leather jacket, which he had with him, cleaned, he said he

-3-

had to use a bathroom and left. He later returned, and after

a further discussion Mhodhrain leaned on the counter and

began writing a customer slip when she felt something prick

her neck. She jumped back and saw the man holding a knife.

He then came inside the counter, pushed various buttons on

the cash register and when it opened took some $400 in cash

and put it in his pocket. Mhodhrain backed away, and, on his

orders, went into the bathroom that was behind the counter.

The man closed the door and she heard a noise as if he were

trying to tie or lock the door shut. After three or four

minutes she heard the front door close and came out, finding

a vacuum cleaner cord tied around the doorknob. She went to

the telephone but found the cord cut. She then "went to

security, the security office, and the security man came in

and he was going to call the police and then he went back to

the office to call the police from his office."

Some time after Mhodhrain returned a police officer

came and lifted fingerprints. At trial, a police fingerprint

expert testified that he compared a print taken from the

bathroom's outer doorknob, finding 20 points of comparison,

and no dissimilarities, with defendant's print on record.1

No opinion was offered as to how long the print had been on

the knob.

 

1. According to FBI standards 12 points of comparison is
sufficient for a positive identification.

-4-

At trial Mhodhrain testified that "the only persons

who had access to th[e] area [behind the counter] would be

the persons working in the store or the driver who has to

bring the clothes in." There was no testimony, however, as

to whether excluding customers was her personal policy or

store policy, or who had worked the day before. She was

unable to identify defendant in the courtroom. At the close

of the Commonwealth's case defendant moved, unsuccessfully,

for a finding of not guilty on the ground that the evidence

was insufficient to sustain a finding that he was the person

who committed the robbery. He has advanced this claim

throughout direct and habeas appeals.

Where, as here, there is no evidence linking

defendant to the crime other than his fingerprint at the

scene, our question is whether it could be found beyond a

reasonable doubt that defendant left his print at the time of

the robbery. The evidence must foreclose all reasonably

viable possibilities that he could have left it at some other

time. Mikes v. Borg, 947 F.2d 353, 356-57 (9th Cir. 1991), 

cert. denied, U.S. , 112 S.Ct. 3055, 120 L.Ed.2d 921 

(1992) (citing cases of several circuits). Indeed, the

Appeals Court here said as much. Commonwealth v. Hall, 32 

Mass. App. Ct. 951, 952, 590 N.E.2d 1177 (1992).

Reviewing the evidence most favorably to the

prosecution, as we must, Jackson v. Virginia, 443 U.S. 307, 

-5-

319 (1979), we see no problem with the trial court's

concluding beyond a reasonable doubt that defendant's print

was not made after the robbery. Even on the unlikely 

assumption that Mhodhrain left the store unlocked while she

went for the security officer, the court could sufficiently

find that defendant did not slip in and handle the bathroom

doorknob during her absence. Whether defendant's print might

have been placed on the knob sometime before the robbery is

more difficult.

The Massachusetts Appeals Court, in affirming the

conviction, reasoned that "because the fingerprint lifted

from the doorknob was unsmudged2, and since the bathroom was

used regularly by all the store's employees, the print was

likely put there by one of the last people to touch the

knob." Hall, 32 Mass. App. Ct. at 952, 590 N.E. at 1178. We 

can agree, but to what extent does this indicate the time?

Was some, more generous, employee on duty the day before?

Were there no other prints, demonstrating survivorship? No

affirmative attempt was made to eliminate the possibility

that defendant's print had not been made the previous day.

 

2. Strictly, the exhibit showing the print was not made part
of the record, and the witness who testified to its
characteristics did not speak as to non-smudging. His
testimony as to details, however, clearly warranted such a
finding. Since defendant's constitutional claim requires a
showing that the evidence did not warrant the conviction,
this factual issue must be resolved against defendant.

-6-

At the same time, a doorknob is a very small area, and it is

used with pressure. Defendant's print, an exhibit, was

unsmudged. Mhodhrain had been on duty nine hours that day

and manifestly would have used the bathroom -- and, perhaps,

handling soiled clothes, for an occasional wash-up. Four

judges, before ourselves, have thought the inference most

compelling that defendant's print was made at the time of the

robbery.

In this circumstance should we count against the

Commonwealth a doubt based on the prosecutor's failure to

have asked the obvious questions that would have cinched its

case? Does this lapse indicate the answers would not have

cinched the case, but the contrary? Admittedly, this is a

long shot. If the trial had been in the federal court we

might have added to that remote possibility the breath of our

general authority, not simply to rebut the remote

possibility, but, in part, to prevent government counsel from

leaving even the appearance of avoiding evidence contrary to

its position. We do not have such authority over our sister

courts.

Affirmed. 

-7-