**Derek Wesley HALL, Petitioner, Appellant,**

v.

**Paul DiPAOLO, Superintendent, Massachusetts Correctional Institution— Norfolk, Respondent, Appellee.**

**No. 95–1379.**

United States Court of Appeals, First Circuit.

Heard Nov. 7, 1995.

Decided Jan. 3, 1996.

Rehearing Denied Feb. 5, 1996.

---

244

Richard B. Klibaner with whom Klibaner & Sabino was on brief, Cambridge, MA, for appellant.

William J. Meade, Assistant Attorney General, with whom Scott Harshbarger, Attorney General, was on brief, Boston, MA, for appellee.

Before SELYA, Circuit Judge, ALDRICH, Senior Circuit Judge, and CYR, Circuit Judge.

BAILEY ALDRICH, Senior Circuit Judge.

Defendant Derek Wesley Hall, having been convicted in the Commonwealth's court for armed robbery in violation of M.G.L. c. 265, § 17, was found guilty at a bench trial following the denial of his motion for acquittal. After exhausting his state appeals he petitioned for a writ of habeas corpus on the ground that the evidence was insufficient to support his conviction for lack of identification. The district court denied the writ. Having reviewed the record *de novo, Scarpa v. Dubois,* 38 F.3d 1, 8 (1st Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 940, 130 L.Ed.2d 885 (1995), we affirm.

The facts, as far as they were established at trial, may be briefly stated. Harvard Square Cleaners, Harvard Square, Cambridge (hereinafter the store), is a small establishment that receives clothes from customers for cleaning, sends them out to clean, and ultimately returns them to customers upon receiving payment. On May 9, 1989, the sole employee was Carmel Mhodhrain, who worked, alone, from 7:00 a.m. to 7:00 p.m. She testified she had been working there for some seven months. At about 4:00 p.m. a man she had never seen before entered the otherwise empty store. She could say no more than that he was black, of medium height, slender, with black hair and was wearing blue jeans and a black sweater. After inquiring about having his leather jacket, which he had with him, cleaned, he said he had to use a bathroom and left. He later returned, and after a further discussion Mhodhrain leaned on the counter and began writing a customer slip when she felt something prick her neck. She jumped back and saw the man holding a knife. He then came inside the counter, pushed various buttons on the cash register and when it opened took some $400 in cash and put it in his pocket. Mhodhrain backed away, and, on his orders, went into the bathroom that was behind the counter. The man closed the door and she heard a noise as if he were trying to tie or

lock the door shut. After three or four minutes she heard the front door close and came out, finding a vacuum cleaner cord tied around the doorknob. She went to the telephone but found the cord cut. She then "went to security, the security office, and the security man came in and he was going to call the police and then he went back to the office to call the police from his office."

Some time after Mhodhrain returned a police officer came and lifted fingerprints. At trial, a police fingerprint expert testified that he compared a print taken from the bathroom's outer doorknob, finding 20 points of comparison, and no dissimilarities, with defendant's print on record.[1] No opinion was offered as to how long the print had been on the knob.

At trial Mhodhrain testified that "the only persons who had access to th[e] area [behind the counter] would be the persons working in the store or the driver who has to bring the clothes in." There was no testimony, however, as to whether excluding customers was her personal policy or store policy, or who had worked the day before. She was unable to identify defendant in the courtroom. At the close of the Commonwealth's case defendant moved, unsuccessfully, for a finding of not guilty on the ground that the evidence was insufficient to sustain a finding that he was the person who committed the robbery. He has advanced this claim throughout direct and habeas appeals.

■ Where, as here, there is no evidence linking defendant to the crime other than his fingerprint at the scene, our question is whether it could be found beyond a reasonable doubt that defendant left his print at the time of the robbery. The evidence must foreclose all reasonably viable possibilities that he could have left it at some other time. *Mikes v. Borg*, 947 F.2d 353, 356–57 (9th Cir.1991), *cert. denied*, 505 U.S. 1229, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992) (citing cases of several circuits). Indeed, the Appeals Court here said as much. *Commonwealth v. Hall*, 32 Mass.App.Ct. 951, 952, 590 N.E.2d 1177 (1992).

■ Reviewing the evidence most favorably to the prosecution, as we must, *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), we see no problem with the trial court's concluding beyond a reasonable doubt that defendant's print was not made *after* the robbery. Even on the unlikely assumption that Mhodhrain left the store unlocked while she went for the security officer, the court could sufficiently find that defendant did not slip in and handle the bathroom doorknob during her absence. Whether defendant's print might have been placed on the knob sometime before the robbery is more difficult.

The Massachusetts Appeals Court, in affirming the conviction, reasoned that "because the fingerprint lifted from the doorknob was unsmudged[2], and since the bathroom was used regularly by all the store's employees, the print was likely put there by one of the last people to touch the knob." *Hall*, 32 Mass.App.Ct. at 952, 590 N.E.2d at 1178. We can agree, but to what extent does this indicate the time? Was some, more generous, employee on duty the day before? Were there no other prints, demonstrating survivorship? No affirmative attempt was made to eliminate the possibility that defendant's print had not been made the previous day. At the same time, a doorknob is a very small area, and it is used with pressure. Defendant's print, an exhibit, was unsmudged. Mhodhrain had been on duty nine hours that day and manifestly would have used the bathroom—and, perhaps, handling soiled clothes, for an occasional wash-up. Four judges, before ourselves, have thought the inference most compelling that defendant's print was made at the time of the robbery.

In this circumstance should we count against the Commonwealth a doubt based on the prosecutor's failure to have asked the obvious questions that would have cinched its case? Does this lapse indicate the answers would not have cinched the case, but the contrary? Admittedly, this is a long shot. If the trial had been in the federal court we might have added to that remote possibility the breath of our general authority, not sim-

---

1. According to FBI standards 12 points of comparison is sufficient for a positive identification.

2. Strictly, the exhibit showing the print was not made part of the record, and the witness who testified to its characteristics did not speak as to non-smudging. His testimony as to details, however, clearly warranted such a finding. Since defendant's constitutional claim requires a showing that the evidence did not warrant the conviction, this factual issue must be resolved against defendant.

ply to rebut the remote possibility, but, in part, to prevent government counsel from leaving even the appearance of avoiding evidence contrary to its position. We do not have such authority over our sister courts.

*Affirmed.*