Filed 5/22/24  P. v. Walker CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ELIAS WALKER,<br><br>　　　Defendant and Appellant. | A166719<br><br>(San Francisco County<br>Super. Ct. No. SCN 231245,<br>CT19003127) |

A jury convicted defendant Elias Walker of burglary, multiple counts of robbery, and other offenses arising from a home invasion committed by masked gunmen.  Walker contends no substantial evidence supports the convictions where the only evidence connecting him to the crimes is DNA evidence found on three movable objects—a mask and two firearms—that were found at or near the crime scene.  Walker also argues the trial court erred in imposing more than one firearm enhancement without finding endangerment to public safety.

We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*The Home Invasion*

In May 2017, an extended family of Juana M., Daniel M., Antonia R., Steven M., and Gabriella A. lived together in a house in San Francisco.  The night of May 21, 2017, Juana and Antonia (who shared a bedroom) had just

1

gone to bed when Juana heard a noise. At first, she thought it was Steven coming home, but then she heard the "door getting kicked in and it was a man dressed in black holding some type of weapon." The man wore a ski mask, and his weapon was "much bigger" than a handgun, "almost like . . . a machine gun."[1] He took Daniel's computer and Antonia's cell phone. The man "pointed the gun in front of [Juana's] face," and she gave him her phone.

Steven and Gabriella came home as the home invasion was in progress. Steven opened the front door and saw men in ski masks with guns. Gabriella was behind Steven. When she saw a masked man with a gun in the house, she turned around, ran away, and called the police. Steven was forced to lie down on the kitchen floor, and his wallet, keys, phone, and everything in his pockets was taken from him. He was hit in the head with "something very hard" and saw blood in his eyes.

*Police Response*

Around 10:55 p.m., police were dispatched to the house on a report of a home invasion. Officers entered the house and announced themselves, shouting, "SFPD." Meanwhile, three other officers had gone to the backyard of a neighboring house to observe the back of the victims' house. After police announced themselves at the victims' house, the officers in the neighboring backyard saw the back door of the victims' house burst open. A suspect in a ski mask came running out and began firing toward the officers in the neighboring yard. The shooter went over the rear fence of the victims' backyard. Two more suspects ran out of the house after the initial shooter.

---

[1] Juana described the gun as having "like a box below it"; she agreed the gun had "a magazine under it."

Soon after the shots were fired, an officer apprehended a male suspect "running through the bushes" on the street behind the victims' house. This man, later identified as Christopher Sims, was Walker's codefendant at trial.

*Police Investigation*

The morning after the home invasion, officers found a Glock 26 pistol with a high-capacity magazine in the kitchen of the victims' house and multiple shell casings in the backyard. Officers searched neighboring backyards looking for "where someone fleeing would have gone." To the west of the victims' house, the neighboring houses "were all connected," so "there wasn't an easy way to the street out of those backyards." About three houses west, a Nike sock was found on a fence between backyards.[2] A few houses further west, there was a path between two houses allowing access to the street. On the path, an officer found "an empty tire" with the following objects inside: a sock that appeared to match the sock found on the fence, a Glock 17 pistol, and a black ski mask.

*Tool Mark and DNA Evidence*

The tool marks on the casings recovered from the victims' backyard were consistent with being fired from the Glock 17 pistol found in the tire down the block.

In July 2017, criminalist Kimberly Wong, who testified as an expert in the field of forensic DNA analysis, analyzed DNA evidence from swab samples taken from the Glock 26 and high-capacity magazine found in the

---

[2] The officer who found the sock on the fence testified that it drew his interest because "the tops of these fences can be sharp," and "it would be good to protect your hands if you're climbing over them, and the sock looked incongruous to me." There was no other clothing hanging in the backyard, and the sock "didn't appear to be wet or exposed to the elements"; it looked "like a fresh sock was just hanging there."

victims' house and the Glock 17 and ski mask found in the tire down the block.

As to the DNA evidence from the black ski mask, Wong was able to interpret "a single major DNA profile present,"[3] and she excluded codefendant Sims as the major contributor. Wong entered the DNA profile from the ski mask in a database, resulting in an investigative lead. In December 2017, she was provided a reference DNA sample from Walker. Wong determined Walker was included as a possible major contributor to the ski mask DNA evidence with a random match probability (that is, "the probability that any person could be included as a contributor to the DNA evidence") of one in at least 562 octillion.

As to the DNA evidence from the Glock 26, the high-capacity magazine, and the Glock 17, Wong determined there were multiple contributors, but she was unable to interpret the evidence further because of the complexity of the mixtures. (Wong determined there were at least four contributors to the Glock 26 and the high-capacity magazine and at least three contributors to the Glock 17.)

Criminalist Alain Oyafuso testified as an expert in forensic DNA analysis with STRmix. He explained that STRmix is a computer "program that utilizes probabilistic genotyping," which the San Francisco Police Department Crime Lab began using in 2018. Oyafuso testified STRmix was "capable of analyzing mixtures of up to four contributors" where previously "it was really, really rare to try to attempt that."

_____

[3] The DNA evidence had been collected from the inside of the mask in the mouth area. Wong determined there were at least two contributors to this item with 90 percent of the mixture contributed by one person.

In 2019, Oyafuso was asked to use STRmix to compare Walker's and Sims' DNA samples with the DNA evidence from the Glock 26 and the high-capacity magazine found in the victims' house and the Glock 17 found in the tire. (He was not asked to analyze evidence related to the ski mask.)

For the Glock 17, the STRmix analysis showed "strong support" for the proposition that Walker was a contributor to the DNA evidence obtained. For the Glock 26, there was "moderate support" for the proposition that Walker was a contributor. For the high-capacity magazine, there was "very strong support" that Walker was *not* a contributor to the DNA evidence.[4]

*Jury Verdict and Sentence*

The jury found Walker guilty of burglary (Pen. Code,[5] § 459; count 7); four counts of first degree robbery in concert (§§ 211, 213, subd. (a)(1)(A); counts 8 [Steven], 11 [Antonia], 14 [Daniel], and 16 [Juana]); four counts of assault with a semiautomatic firearm (§ 245 subd. (b); counts 9 [Steven], 17 [Antonia], 18 [Daniel], 20 [Juana]); assault with force likely to cause great bodily injury (§ 245, subd. (a)(4); count 10 [Steven]; and attempted criminal threats (§§ 664, 422; count 13 [Steven]).[6] As to the offenses other than

---

[4] For Sims, the results were: "very strong support" for the proposition that Sims was *not* a contributor to the Glock 17 DNA evidence; "very strong support for the proposition" that Sims *was* a contributor to the Glock 26 DNA evidence; and "very strong support" that Sims was *not* a contributor to the DNA evidence from the high-capacity magazine.

[5] Further undesignated statutory references are to the Penal Code.

[6] The jury was unable to reach a verdict as to counts 1 through 6 (charges of attempted murder and assault on a peace officer with a semiautomatic firearm related to three police officers) and, as to subsequent counts, the allegations that Walker personally and intentionally discharged a firearm. The jury found Walker not guilty of counts 15 and 19 (charges related to Gabriella).

assault with a semiautomatic firearm, the jury found true the allegation that Walker personally used a firearm.

The trial court sentenced Walker to 16 years, 4 months in prison.

## DISCUSSION

A.   *Sufficiency of the Evidence*

Walker contends the prosecution's "DNA-only" evidence was insufficient as a matter of law to prove he was one of the masked perpetrators.  At the close of the prosecution's case, Walker moved for acquittal under section 1118.1 raising the same issue, and he argues on appeal that the trial court erred in denying his motion.[7]

1.   Standard of Review

"To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. . . .  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).)

---

[7] The trial court did grant Walker's motion as to a charge of elder abuse on the ground there was no evidence the perpetrator would have known how old Antonia was.

"A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the . . . verdict." (*Zamudio*, *supra*, 43 Cal.4th at p. 357.)

" 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) "The same standard [of review] governs in cases where the prosecution relies primarily on circumstantial evidence. . . . 'Although it is the [fact finder]'s duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the [fact finder], not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt.' " (*Zamudio*, *supra*, 43 Cal.4th at pp. 357–358.)

" ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.] 'Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt.' " (*People v. Bean* (1988) 46 Cal.3d 919, 933, 934 [rejecting a claim of insufficiency of the evidence for a murder conviction where the only evidence was that a pair of sunglasses bearing the defendant's fingerprints was found next to the victim's body and that the defendant lived nearby and had been seen observing the victim's house in the past].)

We review the denial of a motion for acquittal under section 1118.1 under the same "standard employed in reviewing the sufficiency of the evidence to support a conviction." (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)

7

2.    Analysis

On the night of May 21, 2017, three masked gunmen, acting together, invaded the victims' home and robbed and assaulted them.  Given the witness testimony and the tool mark evidence, it reasonably could be inferred that the Glock 26 found inside the victims' house and the Glock 17 found in the tire down the block were used by the perpetrators in committing the crimes that night and, further, that the black ski mask found inside the tire with the Glock 17 was worn by one of the perpetrators while he committed the crimes.  Walker does not argue otherwise.  Nor does Walker challenge the admissibility or reliability of the DNA analysis on appeal.  Thus, it is undisputed that Walker's DNA was found on the ski mask, the Glock 17, and the Glock 26, all instruments of the crimes.

Moreover, Walker was *the* major contributor to the ski mask with his DNA making up 90 percent of the DNA detected.  The criminalist who collected the DNA evidence from the mask swabbed the interior of the mask near the mouth because this was "the place that . . . the person who was wearing it would likely leave their DNA."  He explained, "[W]hen you are wearing [the ski mask] and you talk and you would spit, you'd leave your saliva behind."[8]  Considering the DNA evidence together with the

---

[8] There was also evidence that the masked gunmen yelled and talked during the home invasion.  Juana testified the masked gunman who came into her room was "yelling something" and told them not to "look at him in his eyes."  She heard other voices coming from the kitchen, and it sounded like someone was fighting with Steven.  Steven was told to stay on the floor, and he heard the masked men talking.  Gabriella heard a masked gunman say, " 'You know what time it is,' " which she understood to mean "you're getting robbed."  An officer in the neighboring backyard heard "voices in the house" and, after the police announced themselves, someone said, " "We got to go.  The police are here,' " or words to that effect.

circumstance that the ski mask and Glock 17 were found together down the block from the victims' house, a trier of fact reasonably could find that Walker was the perpetrator who wore the ski mask and used the Glock 17 during the home invasion and, therefore, he was guilty beyond a reasonable doubt.

Walker argues the evidence is insufficient because DNA, like fingerprints, "can only establish some form of contact with an object—nothing more." However, we agree with the Attorney General that the additional circumstance of Walker's DNA being found on *both* the ski mask *and* the guns—items that had no apparent connection other than that they were used in a home invasion committed by three masked gunmen—provides sufficient evidence for a reasonable trier of fact to infer that, not only was Walker in "contact with" the items, he used them in committing the crimes.[9]

---

[9] Both parties cite California fingerprint cases to support their respective positions. Walker relies on *Birt v. Superior Court* (1973) 34 Cal.App.3d 934, 936–938, in which the appellate court held evidence of the defendant's fingerprint on a cigarette lighter found in a rental van used in a residential burglary was insufficient to support a charge of burglary, and *People v. Johnson* (1984) 158 Cal.App.3d 850, 852– 853, 856, in which the court held the defendant's thumbprint on a glass bottle containing PCP was insufficient evidence to support a conviction of possession of PCP for sale. The Attorney General cites *In re O.D.* (2013) 221 Cal.App.4th 1001, 1003, 1010 (*O.D.*), in which Division Four of our court upheld a burglary finding where the only evidence implicating the juvenile was his palm print found on the outside of an open window that was the burglar's likely point of entry, and *People v. Preciado* (1991) 233 Cal.App.3d 1244, 1246–1247 (*Preciado*), in which the court found substantial evidence supporting a burglary conviction where the defendant "left his fingerprint on a wristwatch box found in a burgled . . . condominium."

The cases cited by the Attorney General demonstrate that "fingerprint-only" evidence is sufficient to support a conviction when the circumstances are such that it is reasonable to infer the fingerprints were left by the perpetrator. In *O.D.*, the court reasoned, "[T]here was no plausible

For his position, Walker primarily relies on *Mikes v. Borg* (9th Cir. 1991) 947 F.2d 353 (*Mikes*), and *Commonwealth v. Anitus* (Mass.App.Ct. 2018) 97 N.E.3d 700 (*Anitus*).

In *Mikes*, *supra*, 947 F.2d at page 355, the victim was found dead in the basement of his fix-it shop, and the murder weapon was a three-foot post, one of three chrome posts from a disassembled turnstile unit, which the victim had bought at a hardware store about four months earlier. The only evidence linking defendant Mikes to the killing was "the fact that his fingerprints were among those found on the posts that lay adjacent to the victim's body"; of 16 identifiable fingerprints, "the police determined that six belonged to Mikes and ten did not." (*Ibid.*)

The Ninth Circuit Court of Appeals concluded this was insufficient evidence to support a murder conviction. (*Mikes*, *supra*, 947 F.2d at p. 355.) The court found, "Any determination that Mikes' fingerprints were left on the posts during the commission of the offense is unreasonably speculative," noting, "the posts were fully accessible to the general public" both when the turnstile unit was in use and when the unit was for sale in the hardware

___

explanation for why O.D.'s print was on [the victim]'s window other than that he participated in the burglary. It was eminently reasonable to infer that O.D. left his palm print on the window in the process of forcing it open to burglarize [the victim]'s house." (*O.D.*, *supra*, 221 Cal.App.4th at p. 1010.) In *Preciado*, the victim received the wristwatch as a gift 18 months earlier, and the wristwatch box never left the condominium; under these circumstances, the court concluded, the jury properly could infer that the defendant "touched the item during an uninvited foray," rather than that "he did so some 18 months earlier, before the victim received the gift, and the fingerprints endured." (*Preciado*, *supra*, 233 Cal.App.3d at p. 1247.) Here, it is difficult to conjure a plausible innocent explanation for why Walker's DNA is on three items—a black ski mask and two guns—that were used in the home invasion, and it is eminently reasonable to infer that Walker left his DNA on the ski mask and the guns in the lead up to, and commission of, the crimes.

store.  (*Mikes*, *supra*, 947 F.2d at pp. 361, 359.)  In reaching its conclusion, the court observed that, to prove fingerprints were left by the person who committed the crime, "the prosecution must present evidence sufficient to permit the jury to conclude that the objects on which the fingerprints appear were *inaccessible* to the defendant prior to the time of the commission of the crime."  (*Id*. at p. 357, italics added.)

Citing *Mikes*, Walker argues the prosecution in this case failed to present sufficient evidence that the guns and mask were inaccessible to him before the home invasion.  But *Mikes* involved fingerprints found on an item that had been used in public and then held out for sale.  Here, there was no evidence that the black ski mask and two guns were similarly "fully accessible to the general public."  (*Mikes*, *supra*, 947 F.2d at p. 359.)  In *People v. Johnson* (2019) 8 Cal.5th 475, our high court distinguished *Mikes* precisely because "there was no evidence the [item on which the defendant's fingerprint was found] was accessible to the general public before the crime." (*Id*. at p. 516.)  In *Johnson*, the court rejected the defendant's claim that his fingerprint on a gun clip found at the crime scene was insufficient evidence he committed an assault and rape "because the gun clip was a movable object."  (*Id*. at p. 515.)  The court concluded it was reasonable to infer "that defendant loaded the weapon or checked the clip immediately before using it to assault" the victim and did not require the prosecution to prove the defendant could not have had access to the gun clip prior to the commission of the crimes.  (*Id*. at p. 517.)

In *Anitus*, two masked men robbed a Burger King.  Surveillance videos showed "the second assailant removing his mask and, as he is fleeing the crime scene, tossing something into the Dunkin' Donuts plaza" and also showed a vehicle matching the color, make, and model of the defendant's

11

mother's car. (*Anitus*, *supra*, 97 N.E.3d at p. 701.) Police found two cloth items, a white T-shirt and blue bandana, in the plaza. The major profile of the T-shirt and one of the major profiles of the bandana matched the defendant's DNA profile, and the prosecution's theory was that the defendant used the T-shirt as a mask and his confederate wore the bandana. (*Id*. at pp. 701–702.) The defendant presented three witnesses to establish he was elsewhere the night of the robbery, and evidence also showed the defendant's brother—who often drove their mother's vehicle—recently had been involved in a robbery with a similar modus operandi. (The brother's DNA profile, however, was not a major profile of any of the DNA samples from the T-shirt and bandana.) (*Id*. at pp. 702–703.)

The Massachusetts appellate court observed that the "presence [of DNA] on an object alone does not provide sufficient information to determine when the DNA was deposited on the object," and held, under the circumstances of the case, "the defendant's DNA alone was insufficient to provide the jury with enough evidence to sustain the conviction [for armed robbery of the Burger King] beyond a reasonable doubt." (*Id*. at pp. 704–705.)

We question the conclusion of *Anitus*, but in any event, the case is distinguishable on its facts. In *Anitus*, it was reasonably likely under the evidence that the defendant's brother, and not the defendant, committed the crime, and it was not implausible that the defendant had innocently worn or used the T-shirt and bandana before his brother used the items in committing the robbery. But in this case, there are no similar circumstances suggesting an innocent explanation for why Walker's DNA would be on a ski mask and two guns used in a home invasion.

We conclude substantial evidence exists—and existed at the close of the prosecution's case-in-chief—to support the jury's verdict. Accordingly, the

12

trial court did not err in denying Walker's section 1118.1 motion for acquittal. (See *People v. Maciel* (2013) 57 Cal.4th 482, 522 [the prosecution's evidence showing substantial evidence to support the convictions "also demonstrates that the trial court did not err in denying defendant's section 1118.1 motion"].)

B.     *Imposition of Two Firearm Enhancements*

At sentencing, the trial court struck the firearm enhancement for counts 8, 11, 14, and 16, because application of the enhancements could result in a sentence of over 20 years.  (See § 1385, subd. (c)(2)(C) ["application of an enhancement could result in a sentence of over 20 years" is a mitigating circumstance weighing greatly in favor of dismissing the enhancement].)

The trial court did impose two firearm enhancements under section 12022.5, subdivision (a): four years (the middle term) for the principal term of burglary (count 7) and one year, four months (one-third the middle term) for the assault with force likely to cause great bodily injury of Steven (count 10).

On appeal, Walker contends the trial court erred by imposing more than one firearm enhancement without finding that dismissal of the additional enhancement would endanger public safety.  We disagree.

Section 1385, subdivision (c), provides, in part, "(1) Notwithstanding any other law, the court *shall* dismiss an enhancement *if it is in the furtherance of justice to do so*, except if dismissal of that enhancement is prohibited by any initiative statute.  [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement,

13

unless the court finds that dismissal of the enhancement would endanger public safety." (Italics added.)

Among the listed mitigating circumstances is "(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement *shall* be dismissed." (§ 1385, subd. (c)(2) (§ 1385(c)(2)(B)), italics added.)

Despite the phrase "shall be dismissed" in section 1385(c)(2)(B), courts have uniformly rejected the premise that dismissal of all but one enhancement is mandatory. (See *People v. Cota* (2023) 97 Cal.App.5th 318, 335 [citing cases].) In *People v. Anderson* (2023) 88 Cal.App.5th 233, 239–240, review granted April 19, 2023, S278786, the court considered the statute as a whole and reasoned: "[T]he statement that a court 'shall' dismiss certain enhancements appears as a subpart to the general provision that a 'court shall dismiss an enhancement *if* it is in the furtherance of justice to do so.' (§ 1385, subd. (c)(1), italics added.) In other words, the dismissal of the enhancement is conditioned on a court's finding dismissal is in the interest of justice. . . . [¶] It is within these boundaries that section 1385 states the court 'shall' dismiss all but one enhancement . . . . The dismissal *shall* occur but only *if*, in exercising its discretion and giving great weight to certain factors, the court finds dismissal is in the interests of justice or would not endanger public safety." (*Id.* at pp. 239–240.)

Thus, the trial court in this case was not required under section 1385(c)(2)(B) to dismiss all but one enhancement. Walker does not dispute this conclusion, but he argues the court could choose not to dismiss all but one enhancement *only if* it found dismissal would endanger public safety.

There is a split of authority on this issue, as we described in *People v. Ponder* (2023) 96 Cal.App.5th 1042, 1050, review granted January 10, 2024,

S282925.  In *Ponder*, we rejected the argument that section 1385, subdivision (c)(2), "requires dismissal of an enhancement when a mitigating circumstance is present unless the sentencing court finds dismissal would endanger public safety" and instead concluded that the trial court "retains discretion under section 1385(c)(2) to choose not to dismiss the enhancement in the furtherance of justice *for reasons other than public safety*."  (*Id.* at p. 1052, italics added.)

In this case, the trial court's statements at sentencing reflect both knowledge of the applicable sentencing law and careful consideration of Walker's circumstances and the circumstances of the crimes.  We are confident the court considered whether dismissal of the remaining additional firearm enhancement was in the furtherance of justice.  Walker does not persuade us to depart from our holding in *Ponder*.  Accordingly, we reject his claim that all but one firearm enhancement must be dismissed.

## DISPOSITION

The judgment is affirmed.

15

_____

Miller, J.

WE CONCUR:

_____

Stewart, P. J.

_____

Richman, J.

A166719, *People v. Walker*

16