**UNITED STATES of America**

v.

**Joey Bernard GRAVES, Sr., Defendant.**

**Crim. No. 91–690(LFO).**

United States District Court,
District of Columbia.

Jan. 21, 1997.

arises only if the Court awards relief beyond remand to IBIA.

John M. Facciola, Asst. U.S. Attorney, Washington, DC, for United States.

Joey Bernard Graves, Sr., Loretto, PA, Defendant Pro Se.

## *MEMORANDUM*

OBERDORFER, District Judge.

On March 6, 1996, defendant, a *pro se* prisoner, submitted a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. He supplemented his motion on March 14, 1996, and April 8, 1996. The government opposed on March 28, 1996. This is the third time defendant has sought habeas relief. His last petition, alleging claims of ineffective assistance, was filed on May 23, 1995, and denied on September 20, 1995.[1]

Defendant claims he is entitled to a reduction in sentence because he asserts that (i) the recommendation by the Sentencing Commission to equalize penalties for crack cocaine and powder cocaine constitutes a "mitigating circumstance ... not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that prescribed;" (ii) he qualifies for the safety-valve provision of the Guidelines; and (iii) Congress' rejection of the amendment by the Sentencing Commission that would have equalized the penalties for crack and powder cocaine was unconstitutional.

The government argues that defendant has abused the writ of habeas corpus by "raising a claim in a subsequent petition that [defendant] could have raised" in a prior petition without demonstrating "cause and prejudice." *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991). *McCleskey* states:

> The cause and prejudice analysis we have adopted for cases of procedural default applies to an abuse-of-the-writ inquiry in the following manner. When a prisoner

files a second or subsequent application, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's. To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions.

*Id.* at 494, 111 S.Ct. at 1470.

▆ Defendant's first claim could have been raised in the May 23, 1995 writ. Defendant's first claim is that the recommendation by the Sentencing Commission to equalize penalties for crack cocaine and powder cocaine constitutes a "mitigating circumstance ... not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that prescribed." U.S.S.G. § 5K2.0. It is judicially noticeable that the Sentencing Commission report to which defendant adverts was published on February 28, 1995. *See Cocaine and Federal Sentencing Policy, United States Sentencing Commission* (February 28, 1995). On April 8, 1996, defendant filed a pleading entitled "Showing Cause and Prejudice," but that pleading only explained why defendant could not have filed his *third* claim—not the second or first claim—in the May 23, 1995 writ. Finally, defendant's claim also fails on the merits because Section 5K2.0 provides that "the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sen-

---

1. This Circuit has not decided, the Circuits are divided, the Supreme Court has granted certiorari, *Lindh v. Murphy*, — U.S. —, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997), and thus this Court expresses no opinion as to whether the habeas corpus amendments within the Antiterrorism and Effective Death Penalty Act of 1996 should be applied retroactively to writs filed and argued prior to the date the Act was ratified. *Compare Boria v. Keane*, 90 F.3d 36, 37–38 (2d Cir.1996);

*Edens v. Hannigan*, 87 F.3d 1109, 1111 n. 1 (10th Cir.1996) with *Lindh v. Murphy*, 96 F.3d 856, 861–77 (7th Cir.1996) (en banc). This issue was not briefed in this case and, even after briefing, at least one Circuit refrained from deciding whether the Act should be applied retroactively where, as here, defendant's claims "are either procedurally barred or fail under the more lenient provisions of the old law." *Preston v. Delo*, 100 F.3d 596, 599 n. 4 (8th Cir.1996).

tencing Commission in formulating the guidelines that should result in a sentence different from that prescribed.'" (citation omitted). Congress, however, explicitly rejected the Commission's amendment that would have equalized the penalties. The disparity in penalties between crack and powder cocaine, therefore, has been adequately considered by the Sentencing Commission—and its amendment that would have equalized the penalties has been rejected by Congress. The higher crack penalty that defendant received, therefore, is not a valid "aggravating or mitigating circumstance ... not adequately taken into consideration by the Sentencing Commission."

■ It is unclear whether defendant's second claim could have been raised in the May 23, 1995 writ. Defendant's second claim is that he is entitled to a departure from his statutorily-imposed minimum sentence pursuant to the "safety-valve" provision of the Guidelines, set out at U.S.S.G. § 5C1.2. The safety-valve was created by the Commission pursuant to a congressional authorization. *See* 18 U.S.C. § 3553. Congress enacted 18 U.S.C. § 3553 on September 13, 1994. The Commission promulgated Guideline § 5C1.2 pursuant to § 3553 on November 1, 1995. When defendant filed his May 23, 1995 writ, he was chargeable with notice that § 3553 had been enacted but did not have notice that U.S.S.G. § 5C1.2 had been promulgated. It is noteworthy, again, that defendant's "cause and prejudice" pleading explains only why he could not have filed his *third* claim, and not his second or first. In any event, defendant's claim fails on the merits because the safety-valve provision only applies to sentences imposed on or after September 23, 1994. *See* 18 U.S.C. § 3553 (Effective Date of 1994 Amendments). Defendant was resentenced in this case on June 7, 1994, and thus is not eligible for the safety-valve provision.

■ Defendant's third claim does not constitute an abuse of the writ. Defendant's third claim is that although he was convicted for possession with intent to distribute crack, he should be resentenced under the lesser penalties for powder cocaine because Congress acted unconstitutionally in rejecting

the Commission's amendment to equalize the penalties for crack and powder cocaine. On May 1, 1995, the Commission submitted to Congress twenty-seven proposed amendments to the Guidelines. One of those amendments would have equalized the penalties for crack and powder cocaine. That proposed amendment would have automatically become law on November 1, 1995, but for the fact that Congress rejected it with a bill signed by the President on October 30, 1995. *See* P.L. 104-38 ("Act"). The statements that plaintiff relies upon in arguing that the Act was unconstitutional were made by members of Congress in September and October of 1995 in debating whether or not to pass the Act. This claim is properly before the court, therefore, because defendant's last writ was filed on May 23, 1995.

■ Even if defendant could prove that Congress' acted unconstitutionally in refusing to equalize the crack and pure cocaine penalties, defendant, unfortunately, cannot avail himself of any benefit from this conclusion. Defendant was convicted and sentenced in this case in 1992 and then resentenced in 1994 under penalties enacted in 1986. To obtain relief, defendant would have to show that Congress violated the Constitution in 1986 when it enacted the penalties under which he was resentenced. Defendant does not make this claim and he is procedurally barred from doing so because he could have made this claim in either of his two previous writs. Moreover, every Circuit that has addressed this question has concluded that Congress had a rational basis for enacting higher penalties for crack as opposed to powder cocaine and thus did not act unconstitutionally. *See, e.g., United States v. Cyrus,* 890 F.2d 1245 (D.C.Cir.1989); *United States v. Reece,* 994 F.2d 277, 278-79 (6th Cir.1993); *United States v. Frazier,* 981 F.2d 92, 94-95 (3d Cir.1992), *cert. denied,* 507 U.S. 1010, 113 S.Ct. 1661, 123 L.Ed.2d 279 (1993); *United States v. Galloway,* 951 F.2d 64, 65-66 (5th Cir.1992); *United States v. House,* 939 F.2d 659, 664 (8th Cir.1991).

■ Proof that Congress may have violated the Constitution in 1995, therefore, is of no benefit to *defendant* although his claim

may well be worth pursuing. Defendant contends that courts should apply strict scrutiny—not rational basis review—to determine whether Congress violated the Constitution in rejecting the Commission amendment in 1995. Legislation that, *on its face*, classifies according to race is presumptively invalid and can be upheld only if it satisfies strict scrutiny. *Personnel Adm'r v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). A *facially-neutral* law that has a "disproportionately adverse affect upon a racial minority ... is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose." *Feeney*, 442 U.S. at 272, 99 S.Ct. at 2292. A discriminatory purpose may be shown where Congress has "selected *or reaffirmed* a particular course of action, at least in part, because of, not merely in spite of, its *adverse* effects upon an identifiable group." *Id.* at 279, 99 S.Ct. at 2296 (emphasis added) (internal quotations omitted). Defendant, however, relies upon *Shaw v. Reno*, 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993),[2] and *Miller v. Johnson*, —— U.S. ——, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995),[3] in arguing that discriminatory purpose can be shown where Congress acted "at least in part because of ... [*beneficial*] effects upon an identifiable group" (emphasis added). No

court appears to have addressed this assertion, at least in the context of statutory disparities in the penalties for crack and powder cocaine; further, our court of appeals and at least one well-known constitutional scholar have specifically overlooked it. *See, e.g., United States v. Thompson*, 27 F.3d 671, 678 n. 3 (D.C.Cir.1994) (citing the work of Harvard scholar Randall Kennedy in arguing that for equal protection purposes no discriminatory purpose can be inferred from the disparity in penalties between crack cocaine and pure cocaine because "severe penalties for crack offenses actually *help* rather than hurt law-abiding African–Americans" (emphasis in original)). If defendant is correct, then the scope of "discriminatory purpose" analysis in determining whether to apply strict scrutiny is now broader in that it includes *any* legislative purpose with respect to a protected group, not just an *adverse* purpose.

Defendant argues in addition that the legislative history of the Act demonstrates that Congress was trying to help black communities by maintaining higher penalties for crack. Defendant, for example, cites Representative Clay Shaw (R–FL), who stated:

> As a matter of fact, it was a question of trying to "save" the minority neighbor-

---

2. *Shaw* held that the reapportionment scheme at issue there was so irrational on its face that it could be understood only as an effort to segregate voters into separate districts on the basis of race. The Court concluded that facially-neutral legislation that is "unexplainable on grounds other than race" must withstand strict scrutiny to survive a challenge under the Equal Protection Clause of the Fourteenth Amendment. The Court rejected Justice Stevens' argument that "racial gerrymandering poses no constitutional difficulties when the lines are drawn to favor the minority, rather than the majority." *Id.* at 650, 113 S.Ct. at 2829. The Court stated:

> We have made clear ... that equal protection analysis is not dependent on the race of those *burdened* or *benefited* by a particular classification. Indeed, racial classifications receive close scrutiny even when they may be said to burden or benefit the races equally.

*Id.* at 650–51, 113 S.Ct. at 2829 (citations omitted) (emphasis added).

3. *Miller* decided whether Georgia's Eleventh District within the State's reapportionment plan gave rise to a valid equal protection challenge under the principles announced in *Shaw*. The

Court held that "it is the plaintiff's burden to show, either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose, that race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." *Id.* at ——, 115 S.Ct. at 2488. The Court upheld on two grounds the district court's decision to apply strict scrutiny because the boundaries of Eleventh District were "unexplainable on grounds other than race." First, the Court noted that the Eleventh District, while perhaps not bizarre on its face, did appear to be racially-gerrymandered when its shape was considered in conjunction with the district's racial and population densities. Second, and more importantly to this case, the Court found that the Eleventh District "was motivated by a predominant, overriding desire" to create a third majority-black district in order to obtain Department of Justice preclearance pursuant to § 5 of the Voting Rights Act, 42 U.S.C. § 1973. Defendant argues that even though the Georgia legislature's "overriding desire" was to *help* black residents of Mississippi, the Court still applied strict scrutiny to the facially-neutral reapportionment plan.

hoods from this awful curse, that had gone all across this country, and it is not only confined in the minority areas. I will not suggest that. But it seemed that was where it was having its biggest impact, and this is where we had to go after the problem and "this is why we did it."

Cong.Rec. H–10260 (daily ed. October 18, 1995).

Rep. Shaw also stated that "the inner city neighborhoods, the poor minority neighborhoods, are the most fragile in the entire country.... They are the ones where we have to rid the neighborhood of drug dealers." *Id.* at H–10261. Rep. Bob Barr (R–GA) also stated, "Those people ought to be punished more because it is those people who are going into the housing projects where our black youth are being killed.... And those mothers particularly tell me, 'Get those people off the streets and put them away for a long period of time.'" *Id.* at H–10269.

Nonetheless, as concluded previously, even if defendant is correct that the Act is unconstitutional for the reasons he states, he cannot receive any benefit from such a conclusion because he was convicted and sentenced before the Act was ratified. Accordingly, "the motion and the files and records of the case conclusively show that [defendant] is entitled to no relief." 28 U.S.C. § 2255, and an accompanying order dismisses defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Defendant is reminded, however, that he may appeal this order and request the appointment of counsel at the appellate level.

### ORDER

Defendant filed a Motion to Vacate, Set Aside, or Correct a Sentence. For reasons stated in an accompanying Memorandum, it is this 17th day of January 1997 hereby

ORDERED: that defendant's motion is DENIED.