Ormond L. WIMBERLY, Jr., Petitioner,

v.

David McKUNE, et al., Respondent.

No. 94–3201–DES.

United States District Court,
D. Kansas.

April 16, 1997.

Ormond Lee Wimberly, Jr., Lansing, KS, pro se.

Kay Huff, University of Kansas School of Law, Lawrence, KS, for Petitioner.

Melanie S. Pfeifer, Kansas Bureau of Investigation, Topeka, KS, for Respondents.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This is a habeas corpus petition, 28 U.S.C. § 2254, filed by an inmate of the Kansas State Penitentiary, Lansing, Kansas, challenging his conviction of first degree murder. Petitioner was granted leave to proceed in forma pauperis, and an order to show cause issued. Respondents filed an answer and return, and petitioner filed a traverse. Having examined all the materials in the file including the records and transcripts of the state criminal and post-conviction proceedings, the court makes the following findings and order.

### PROCEDURAL HISTORY

Petitioner was convicted of first degree murder upon a jury verdict of guilty in Shawnee County District Court, Topeka, Kansas, on August 18, 1988. On direct appeal, the Supreme Court of the State of Kansas reversed the additional consecutive life sentence imposed by the sentencing judge based upon a prior military court martial conviction, but otherwise affirmed the conviction and life sentence. Petitioner's motion pursuant to K.S.A. 60–1507 was denied by the Shawnee County District Court, the denial was affirmed by the Court of Appeals for the State of Kansas, and application for review was denied by the Kansas Supreme Court.

### FACTUAL BACKGROUND

The facts giving rise to petitioner's conviction were set forth in the opinion of the Kansas Supreme Court on direct appeal and are summarized here. On the morning of June 17, 1981, the body of 75 year-old Sarah Woody was found on the rear floor and seat of her car in the parking lot of Montgomery Wards in Topeka, Kansas. An autopsy indicated that Woody had suffered five bullet wounds from a large caliber weapon shot at close range, one of which was fatal. The time of death was estimated between 3:30 and 9:30 p.m. on June 16, 1981. Several witnesses testified that Woody's vehicle had been parked in the Ward's parking lot for some time before her body was found. A teller working at the drive up window at Capitol Federal Savings and Loan in Topeka testified she had cashed a check in the amount of $500 for Mrs. Woody the afternoon of June 16. Police officers who processed the crime scene testified as to their actions which included dusting for fingerprints, and described items found in Mrs. Woody's car. The items found included a purse with its contents strewn on the right rear floorboard and an open shoe box and package of Kleenex on the front floorboard of the passenger side. No money was found in the vehicle.

The Woody murder was unsolved for several years. In March 1987, a special agent with the KBI investigating a homicide in Kansas City in which Wimberly was a suspect noticed that slugs found in that investigation were similar to slugs removed from Mrs. Woody's body and vehicle. Wimberly was asked if he would allow the KBI to take his fingerprints and cooperated with the agents.

Two fingerprint specialists testified regarding the latent fingerprints found on the items in Mrs. Woody's car. Wimberly's fingerprints were found on a Standard Oil charge receipt dated January 10, 1981, and a King Travel receipt dated May 6, 1981. The two receipts had been found by officers inside Mrs. Woody's billfold which had been near the purse in her car. Wimberly's fin-

gerprints were also on the show box and the Kleenex package found in the car.

A witness, who worked in the Federal Building located one block from where Mrs. Woody's body was found, could not give an exact time but testified that Wimberly had been in the witness' office sometime during the day on June 16, 1981. Another witness testified that he had seen a handgun in Wimberly's car while cleaning it about a year prior to the murder. Six close friends of Mrs. Woody and her husband testified that they had never heard Mrs. Woody mention Wimberly and had never seen him in her company.

### CLAIMS

Petitioner asserts two grounds as the basis for his petition: (1) that he was denied effective assistance of trial counsel and (2) that the evidence was constitutionally insufficient to convict him of first degree murder.

### EXHAUSTION

Petitioner has fully exhausted the available state remedies in that he presented his claim of insufficient evidence on direct appeal and his claim of ineffective assistance of counsel by state post-conviction motion, and the records indicate that these claims were considered by the state appellate courts on the merits. Thus, petitioner is properly before this court on his petition for federal habeas corpus relief.

### APPLICABILITY OF THE AEDPA

■ On April 24, 1996, while Wimberly's habeas petition was under consideration by this court, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) came into effect "with a stroke of the Presidential pen." *Ford v. Ahitow,* 104 F.3d 926 (7th Cir.1997); Pub.L. 104–132, 110 Stat. 1214. Among other changes, the Act amended 28 U.S.C. § 2254(d), the habeas statute under which petitioner seeks relief. The initial question raised by this case is whether or not the amended § 2254(d) applies to cases pending on the date of its enactment so that it governs our review of this habeas petition.

The AEDPA includes a new Chapter 154, 28 U.S.C., establishing procedures that apply only to prisoners in state custody under a death sentence which are not applicable in this non-capital case. It also amended Chapter 153, 28 U.S.C., creating strict filing deadlines for all habeas corpus applications, restricting the ability of a prisoner to bring more than one application, rewriting the federal habeas standard of review, and narrowing the circumstances in which an appeal of a habeas action may be taken.

■ Congress stated explicitly that the death-penalty chapter applies retroactively. AEDPA, § 107(c). In contrast, the amendments to Chapter 153 lack any provision specifying whether they are prospective or retroactive and contain no effective date. Generally, a statute is effective upon the date of its enactment unless an express provision states otherwise. *Bradshaw v. Story,* 86 F.3d 164, 166 (10th Cir.1996). We attempted to determine applicability of the habeas amendments of chapter 153 of the AEDPA because of this presumption. *Hatch v. State of Oklahoma,* 92 F.3d 1012, 1014, FN2 (10th Cir.1996).

At this point it appears from our research that Congress, the Supreme Court and the Tenth Circuit have not yet determined the applicability of the § 2254(d) standard of review amendments to habeas petitions pending at the time of the AEDPA's enactment. Thus, we studied the relevant decisions and reasoning of other federal courts.

The circuit courts of appeals which have decided this question are divided. The Fifth and Seventh Circuits have explicitly held in lengthy, well-reasoned opinions that the amended § 2254(d) applies to cases pending on the date the AEDPA was enacted. *Drinkard v. Johnson,* 97 F.3d 751, 766 (5th Cir. 1996) *cert. denied,* —— U.S. ——, 117 S.Ct. 1114, 137 L.Ed.2d 315, 65 USLW 3598 (1997); *Lindh v. Murphy,* 96 F.3d 856, 865 (7th Cir.1996). The Ninth Circuit issued a one page "decision prior to issuing an opinion" holding that the amendments to chapter 153 of the AEDPA do not apply to cases filed in the federal courts of that circuit prior to the Act's effective date. *Jeffries v. Wood,* 103 F.3d 827 (9th Cir.1996). The Second Circuit in a brief opinion held that the AEDPA does not apply to pending non-capital cases due to retroactivity problems. *Boria v. Keane,* 90

F.3d 36 (2d Cir.1996). In a more deliberate opinion the U.S. District Court for the Eastern District of Virginia held chapter 153 of the AEDPA inapplicable to pending cases and cited other district court opinions in accord. *Satcher v. Netherland,* 944 F.Supp. 1222, 1247, FN15 (1996). A reasoned district court opinion going the other way and citing opinions by other courts is *Zuern v. Tate,* 938 F.Supp. 468 (S.D.Ohio 1996). Other circuit courts have expressly avoided deciding whether or not amended § 2254(d) applied to pending cases. *See e.g. Berryman v. Morton,* 100 F.3d 1089, 1104 (3d Cir.1996); *Hunter v. United States,* 101 F.3d 1565, 1571 FN5 (11th Cir.1996); *Sherman v. Smith,* 89 F.3d 1134, 1142 FN1 (4th Cir.1996) *cert. denied,* —— U.S. ——, 117 S.Ct. 765, 136 L.Ed.2d 712 (1997). We believe that our own circuit court of appeals has substantially followed the last option.

The courts agree that *Landgraf v. U.S.I. Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), is the controlling precedent for determining the effect of intervening changes in the law. However, they vary widely in the extensiveness of their analysis under *Landgraf. See Zuern* at 475. A thorough *Landgraf* analysis requires that courts "evaluate *each provision* of the Act in light of ordinary judicial principles concerning the application of new rules to pending cases and preenactment conduct." *Landgraf,* 511 U.S. at 280–81, 114 S.Ct. at 1505 (emphasis added); *Satcher* at 1247. And yet many of the original pronouncements have been broad statements that the AEDPA as a whole either applies or it does not.

The Tenth Circuit Court of Appeals has analyzed the applicability of the AEDPA on a pending case under *Landgraf* and stated that the new amendments must be applied "unless to do so would have retroactive effect." *Lennox v. Evans,* 87 F.3d 431, 432 (10th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 746, 136 L.Ed.2d 684 (1997). In *Lennox,* the Tenth Circuit concluded that the certificate to appeal requirements of amended § 2253(c)(2) are to be applied to pending § 2254 habeas petitions because no new legal consequences resulted. In *United States v. Lopez,* 100 F.3d 113, 116 (10th Cir.1996), a different Tenth Circuit panel citing *Landgraf* held that the one-year limitation period to file a § 2255 motion should not be applied to pending motions because the new provision attaches new legal consequences to events completed before enactment. Earlier in *Edens v. Hannigan,* 87 F.3d 1109 FN1 (10th Cir.1996), a third, completely different panel held in a footnote with no legal citation that the "new law does not apply to this case" in which a certificate of probable cause to appeal had been issued prior to enactment. This holding was apparently based upon the observation that only § 107 contains an effective date provision. *Edens* has since been cited in surveys by various courts to denote the Tenth Circuit as holding that the AEDPA amendments should not be applied retroactively. *See e.g. Drinkard,* 97 F.3d at 764; *Lindh,* 96 F.3d at 865; *Berryman,* 100 F.3d at 1103; *Archie v. Hobbs,* 954 F.Supp. 1149 (W.D.Va.1997). While this opinion was being drafted, the Tenth Circuit itself cited *Edens* for its holding that "substantive portions" of the AEDPA do not apply retroactively. *Sena v. New Mexico State Prison,* 109 F.3d 652 (10th Cir. 1997). But in *Sena* the Court also expounded the more rational position that "procedural portions of that law are applicable." It thus applied the AEDPA to construe petitioner's notice of appeal as an application for a certificate of appealability as required by the amended 28 U.S.C. § 2253(c); but reviewed the district court's dismissal of the petition by the "substantive habeas law prior to the adoption of the AEDPA."

*Edens* is the closest the Tenth Circuit has come to expressly holding that the new amendments to § 2254(d), said to increase "the deference to be paid by the federal courts to the state court's factual findings and legal determinations," [*Houchin v. Zavaras,* 107 F.3d 1465 (10th Cir.1997) ] should not be applied to habeas corpus attacks upon non-capital convictions pending when the amendments were enacted. Yet without a published opinion discussing whether or not these particular provisions are substantive, what precise differences the amendments effectuate in the standard of review so as to determine whether in actuality they have a retroactive effect, and then expressly holding

that amended § 2254(d) is not to be applied to pending cases, we do not feel comfortable reading the 10th Circuit opinions as so mandating.

Instead, we perceive that the Tenth Circuit has keenly avoided making the determination as to the newly worded standard of review provisions by evaluating pending habeas claims under the pre-amendment standards said to be "more favorable" to a petitioner rather than the "more strict" new standards. *See e.g. Earnest v. Dorsey,* 87 F.3d 1123, 1127 FN1 (10th Cir.) *cert. denied,* — U.S. ——, 117 S.Ct. 527, 136 L.Ed.2d 414 (1996); *Houchin* at 1470; *Jamerson v. Reynolds,* 89 F.3d 850, 1996 WL 364595, **1 FN2 (10th Cir.1996, Table); *Ontiveros v. Dorsey,* 99 F.3d 1150, 1996 WL 603276, **3 FN2 (10th Cir.1996, Table), *cert. denied,* — U.S. ——, 117 S.Ct. 1116, 137 L.Ed.2d 316 (1997). Some courts have also avoided making this determination by reviewing habeas claims under both standards or more precisely by simply stating that doing so would lead to identical results. *See e.g. Crislip v. Newton,* 107 F.3d 20, 1997 WL 43515 FN3 (10th Cir. 1997, unpublished); *Jamerson* at FN3; *Moore v. Calderon,* 108 F.3d 261, 1997 WL 100939 (9th Cir.1997); *Oliver v. Wood,* 96 F.3d 1106 FN2 (8th Cir.1996) *cert. denied,* — U.S. ——, 117 S.Ct. 992, 136 L.Ed.2d 872 (1997); *Brown v. Cain,* 104 F.3d 744, 753 FN3 (5th Cir.1997); *Berryman* at 1104; *Dickerson v. Vaughn,* 90 F.3d 87, 90 (3d Cir.1996); *Livingston v. Johnson,* 107 F.3d 297, 302 (5th Cir.1997).

In conclusion, from our survey of the available law we find the reasoning of the Fifth and Seventh Circuits to be much more thorough and compelling than the summary holdings of *Edens* and the First and Second Circuits. However, we do not venture to make our own determination of this issue in this case since it might appear contrary to the Tenth Circuit's, and particularly since the Supreme Court has granted certiorari in *Lindh. Lindh, cert. granted,* — U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997) (on the question of whether § 107(c) fails to specify the extent to which § 2254(d) is to apply retroactively to pending habeas petitions, and, if so, whether the court correctly determined that the "habeas-curtailing statutes apply retroactively") 65 USLW 3483 (Jan. 14,

1997); *Houchin* at 1470; *cf. United States v. Graves,* 953 F.Supp. 7, 8 FN1 (D.D.C.1997).

The federal courts speaking to the matter thus far do seem to agree that the standard by which we review habeas petitions has undergone significant changes with the passage of the AEDPA. *See e.g. Houchin* at 1469–70; *Jamerson,* 1996 WL 364595 at *2 (amendments "greatly heighten the degree of deference paid to a state court's findings of fact"); *Ford,* 104 F.3d at 935–36 (the new § 2254 establishes that greater deference be accorded state court determinations); *Gomez v. Acevedo,* 106 F.3d 192 (7th Cir.1997) (amendments mandate that federal courts give deferential review to state court decisions on sufficiency of the evidence claims, and petitioner has "high burden"); *Dickerson* at 90 ("more deferential"); *Drinkard v. Johnson,* 97 F.3d at 768 (can grant habeas relief only if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists). However, we do not have sufficient confidence in these statements which are mainly dicta. *Cf.,* Larry W. Yackle, *A Primer on the New Habeas Corpus Statute,* 44 Buff.L.Rev. 381 (Spring 1966). Since all but a few courts to date have either dealt summarily with the issue or avoided it altogether, there is very little substantive law interpreting and applying the new standards. *But see Lindh* at 870, (habeas court must defer to state court's determination of a mixed question of law and fact "unless error grave enough to be called unreasonable"); *Drinkard* at 768; *Blankenship v. Johnson,* 106 F.3d 1202 (5th Cir.1997) (where the Supreme Court has never decided the issue, the state court's adjudication was not contrary to clearly established federal law as determined by the Supreme Court and habeas relief must be denied); *Zuern,* 938 F.Supp. at 475 (the Act leaves intact the power and duty of federal courts to review de novo state court determinations of pure questions of federal law and mixed questions of law and fact). Thus, we conclude at this embryonic juncture in the development of the law on the applicability of the AEDPA and the substance of the changes to the standard of review, that the safe course is to review petitioner's claims under pre-amendment standards with the presumption that

the results would be the same were his claims reviewed under the presumptively more strict amendments.

We now progress to address the merits of petitioner's claims.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's first claim is that he was denied the right to testify due to ineffective assistance of trial defense counsel.

### LEGAL STANDARDS

"[A] defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *See Rock v. Arkansas,* 483 U.S. 44, 49, 107 S.Ct. 2704, 2708, 97 L.Ed.2d 37 (1987). This right arises from several provisions in the Constitution. It is a "necessary corollary to the Fifth Amendment's guarantee against compelled testimony," *id.,* at 52, 107 S.Ct. at 2709; it is part of a criminal defendant's sixth amendment right to present a personal defense and call witnesses in his favor, *id.;* and "[it] is one of the rights that 'are essential to due process of law in a fair adversary process'," *id.,* at 51, 107 S.Ct. at 2708–09 [quoting *Faretta v. California,* 422 U.S. 806, 819 FN15, 95 S.Ct. 2525, 2533 FN15 (1975)].

The majority of the circuit courts which have addressed the question have explicitly held that the right to testify is fundamental. *See DeLuca v. Lord,* 858 F.Supp. 1330, 1354 (S.D.N.Y.1994) *aff'd* 77 F.3d 578 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996) (and cases cited therein). The Eleventh Circuit in *United States v. Teague,* 953 F.2d 1525 (11th Cir.1992) (en banc) *cert. denied,* 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992) undertook the "most comprehensive" examination of this issue. In *Teague,* the court held that the defense attorney is primarily responsible for safeguarding his client's right to testify so that an ineffective assistance of counsel claim on direct or collateral review is the proper remedy for any violation of that right. *DeLuca,* 858 F.Supp. at 1355.

■ The right of the accused to testify is a personal right that only the accused can waive; defense counsel cannot waive the right as a matter of trial strategy without the

defendant's consent. *United States v. Hershberger,* 940 F.2d 671, 1991 WL 136337 (10th Cir.1991, Table) [citing *United States v. Bernloehr,* 833 F.2d 749, 751 (8th Cir.1987); *United States v. Curtis,* 742 F.2d 1070, 1076 (7th Cir.1984), *cert. denied,* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986)]; *Teague, supra.* When a defendant asserts that he desires to exercise his constitutional right to testify, counsel's duty is to inform the defendant why he believes this course will be unwise or dangerous. If a defendant insists on testifying, however irrational that insistence might be from a tactical viewpoint, counsel must accede. *Hershberger,* 1991 WL 136337 at *2 (*citing Curtis* at 1076). If petitioner can prove that his counsel prevented him from testifying by asserting that counsel, rather than defendant, would make the decision whether defendant would testify, defendant would be entitled to relief. *Hershberger,* 1991 WL 136337 at *2.

Petitioner couched this claim as ineffective assistance of counsel in the state courts and in his petition to this court and alleges that the actions and inactions of counsel violated his constitutional rights. *See Teague* at 1532. We thus analyze this claim under ineffective counsel standards while noting that some courts have focused on whether or not there was a knowing, intelligent waiver of a fundamental constitutional right.

■ The Sixth Amendment provides that an accused has the right to assistance of counsel in all criminal prosecutions. U.S. Const. amend. VI; *Houchin* at 1470. This right to assistance of counsel includes the right to effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984). "Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *Houchin* at 1470. Thus, to establish a claim of ineffective assistance of counsel under *Strickland,* a defendant must first show that counsel committed serious errors in light of prevailing professional norms so that the "representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. at 2064. Second,

the petitioner must establish that he was prejudiced by counsel's representation. *Id.* at 687, 104 S.Ct. at 2064.

Courts should be highly deferential in reviewing counsel's performance, and every effort should be made to "eliminate the distorting effects of hindsight so that the challenged conduct is evaluated from counsel's perspective at the time the events took place." *Strickland* at 689, 104 S.Ct. at 2065; *Edens,* 87 F.3d at 1114. There is a "strong presumption" that counsel has acted reasonably and represented his client effectively. *Davis v. Executive Director of Department of Corrections,* 100 F.3d 750, 759 (10th Cir. 1996); *Strickland* at 689, 104 S.Ct. at 2065; *see also Brecheen v. Reynolds,* 41 F.3d 1343, 1365 (10th Cir.1994) *cert. denied,* — U.S. —, 115 S.Ct. 2564, 132 L.Ed.2d 817 (1995). Petitioner bears the burden of proving both deficient performance and prejudice. *Davis* at 759 (*citing Brecheen* at 1365). An ineffectiveness claim is reviewed de novo as it presents a mixed question of law and fact. *Davis* at 759; *Brewer v. Reynolds,* 51 F.3d 1519, 1523 (10th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 936, 133 L.Ed.2d 862 (1996); *Brecheen* at 1365–66; *United States v. Whalen,* 976 F.2d 1346, 1347 (10th Cir.1992).

## DISCUSSION

In his petition, Mr. Wimberly alleged that he told his counsel he wanted to testify but that defense counsel "interfered" with his right to testify. The record indicates that the defense rested at trial without calling defendant as a witness and that defendant made no objection on the record. Petitioner contends that counsel never informed him that he had the ultimate authority to decide whether he would testify and that counsel coerced him to give up his right. In his brief in support of this claim he asserts that his two defense counsel "overbore his desire to testify by adamantly insisting that he could not so testify" and that he was "not informed that it was his right to testify, regardless of his attorneys' wishes."

The trial judge held a plenary hearing on this claim when raised for the first time in petitioner's 60–1507 motion. Petitioner was represented by new counsel at this hearing and testified along with the two attorneys who acted as trial defense counsel. An evidentiary hearing held pursuant to K.S.A. 60–1507 is a civil proceeding in which the burden is upon the movant to establish his ground for relief by a preponderance of the evidence. The trial court is required to make findings of fact and conclusions of law. *See Taylor v. State of Kansas,* 252 Kan. 98, 843 P.2d 682 (1992).

The trial court in this case made such findings including that trial counsel Ron Wurtz could not recall specifically advising petitioner that the decision to testify was ultimately the defendant's but it was his practice to always advise his clients of this right; that in this particular case Wurtz felt Wimberly knew his rights from his actions, education and prior murder trial experience; and petitioner admitted that he advised his counsel before the final day of trial that he would yield to his advice on this matter by stating "go ahead and do what you want to do then." Wurtz also testified that he believed the decision to testify was left to the petitioner who voluntarily relinquished that right. Wurtz acknowledged that it was his adamant opinion and advice that the best trial strategy was not to take the stand because their reasonable doubt argument would be weakened, the fingerprint evidence would not be explained, and petitioner would be open to cross examination on matters previously excluded by motion in limine. The assistant trial defense attorney, Byron Cerrillo, testified that he attended the meeting the evening before trial, and that while he did not recall Wurtz advising Wimberly that he had an absolute right to testify and he did not do so, it was his opinion that petitioner and Wurtz resolved that he should not testify.

The state trial court concluded that petitioner did not meet his burden of proving that he was not advised of his absolute right to testify or that he was coerced. The court found additional support for its conclusion from the facts that Wurtz and petitioner had an intense, lengthy argument over whether or not he should testify which would have been unnecessary had petitioner not known his will could be exerted; that petitioner has a degree in criminal justice; and that peti-

tioner had been involved in two prior criminal trials. On appeal of the 60–1507 motion, the Kansas Court of Appeals found that the record provided "ample support for the trial court's decision."

■■■ State court findings of fact made in the course of deciding an ineffectiveness claim are entitled to deference, and are presumed to be correct. *See Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070; *Edens,* 87 F.3d at 1114; *Medina v. Barnes,* 71 F.3d 363, 369 (10th Cir.1995); *Davis v. Zavaras,* 100 F.3d at 756. In this case, the transcript of the plenary hearing from the habeas proceedings held in the District Court of Shawnee County, Kansas and the written opinion of the state appellate court are adequately supported by the transcript of the 60–1507 proceeding.

Petitioner has failed to demonstrate that these factual determinations are not fairly supported by the evidence in the state record. Because petitioner has failed to overcome the presumption of correctness under the pre-amendment standards, which are presumably more favorable to a petitioner, it follows that he would also fail to meet the greater burden imposed by the heightened deference required by the AEDPA. *See Jamerson,* 89 F.3d 850, 1996 WL 364595 at *2.

Applying the legal standards to these facts, the court concludes that petitioner has not shown deficient performance by trial defense counsel and is thus not entitled to habeas corpus relief on this claim.

■■■ Moreover, the court notes that even assuming deficient performance by counsel, petitioner's allegations fail to meet the prejudice requirement of the *Strickland* test. *Hershberger,* 1991 WL 136337 at *4; *United States v. Rantz,* 862 F.2d 808, 811 (10th Cir.1988), *cert. denied,* 489 U.S. 1089, 109 S.Ct. 1554, 103 L.Ed.2d 857 (1989); *see also United States v. Miller,* 907 F.2d 994, 1004 (10th Cir.1990). Mr. Wimberly argues that prejudice should be presumed. The presumption of prejudice is based upon language from *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) in which the Supreme Court observed that, in

the unusual case where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," prejudice is presumed. *Id.* at 659, 104 S.Ct. at 2047. Examples of such failure include "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding," *id.* at 659 FN25, 104 S.Ct. at 2047 FN25, or where a defendant is denied the right to effectively cross-examine a witness. *Id.* at 659, 104 S.Ct. at 2047. The Court specifically observed, however, that it is only in a narrow class of cases that prejudice will be presumed: "[a]part from circumstances of that magnitude ... there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 659 FN26, 104 S.Ct. at 2047 FN26. *Davis v. Zavaras,* 100 F.3d at 757. We would not presume prejudice under the facts of this case.

■■■ To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Brewer,* 51 F.3d at 1527. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland* at 687, 104 S.Ct. at 2064; *Stafford v. Saffle,* 34 F.3d 1557, 1562 (10th Cir.1994) *cert. denied,* 514 U.S. 1099, 115 S.Ct. 1830, 131 L.Ed.2d 751 (1995); *Brewer* at 1523; *Yarrington v. Davies,* 992 F.2d 1077 (10th Cir.1993).

Although petitioner now makes the conclusory statement that his testimony would have changed the outcome of the trial, he alleges only that he would have declared his innocence. He does not specify or explain the favorable significance of the lost testimony. He does not allege that he would have testified as to a factual defense such as a believable alibi or how the incriminating fingerprints could have come to be imprinted on items found in the victim's billfold and vehicle where the body was found. *Cf. Rantz* at

811; *Tafoya v. Gunter*, 77 F.3d 493, 1996 WL 80473 (10th Cir. Table) *cert. denied,* —— U.S. ——, 116 S.Ct. 1690, 134 L.Ed.2d 790 (1996). Petitioner pleaded not guilty prior to trial so that his assertion of innocence does not alter the evidence before the trial court. While we cannot say with certainty that his declaration of innocence before the jury would not have persuaded them to find him innocent, we simply are not convinced that this testimony would probably have resulted in a different jury verdict. Thus, even if we had found deficient performance by counsel, petitioner has failed to demonstrate a reasonable probability that the outcome of his trial would have been different. Our confidence in the outcome is not undermined by petitioner's allegations. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Brewer* at 1527; *see also Rogers v. United States,* 91 F.3d 1388, 1391–1392 (10th Cir.1996) (§ 2255 appeal).

### SUFFICIENCY OF THE EVIDENCE

Petitioner's remaining claim is that the evidence was constitutionally insufficient to convict him of first degree murder. In support of this claim, petitioner alleges that there was no direct evidence and insufficient circumstantial evidence connecting him to the murder of Mrs. Woody, and that the underlying felony of aggravated robbery was not proven. Petitioner also argues the conviction was based upon an impermissible stacking of inferences because the jury had to infer that Mrs. Woody was robbed, that her death occurred during the robbery and that Wimberly was the one who robbed and killed her during the course of the robbery.

### LEGAL STANDARDS

The Supreme Court has clearly stated that the Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime of which he was charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). The *Winship* Court did not indicate, however, what effect its holding had on either direct appellate review or federal habeas corpus review of criminal convictions. In 1979, the Supreme Court answered that question in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Court in *Jackson* explicitly held that a federal court may grant habeas relief only if it determines that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324, 99 S.Ct. at 2791–92.

In *Jackson,* the Court "implicitly suggested that state appellate courts must apply at least the same constitutional standard when reviewing convictions for sufficiency of the evidence." *Id.* at 316–22, 99 S.Ct. at 2787–91. (footnote omitted); *Gomez v. Acevedo,* 106 F.3d at 197. It has been recently held that *Jackson*'s "no rational trier of fact" standard "accords no deference whatsoever to state appellate courts applying" the standard. *Gomez* at 198. In other words, a federal district court reviewing a sufficiency of the evidence claim on habeas "repeats the same constitutional exercise that a state appellate court must undertake." *Id. Jackson* thus requires the application of a de novo standard of review for habeas sufficiency of the evidence claims, as six justices of the Supreme Court explicitly recognized in a more recent, leading habeas case. *Id.; see Wright v. West,* 505 U.S. 277, 290, 112 S.Ct. 2482, 2489, 120 L.Ed.2d 225 (1992) (opinion of Thomas, J.); *Wright* at 303, 112 S.Ct. at 2496–97 (O'Connor, J., concurring in judgment); *see also Kelly v. Roberts,* 998 F.2d 802, 807 (10th Cir.1993); *Tapia v. Tansy,* 926 F.2d 1554, 1562 (10th Cir.), *cert. denied,* 502 U.S. 835, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991); *Beachum v. Tansy,* 903 F.2d 1321, 1325 (10th Cir.), *cert. denied,* 498 U.S. 904, 111 S.Ct. 269, 112 L.Ed.2d 225 (1990).

Once an accused has been convicted and reviewing courts uphold that conviction, a federal court engaged in collateral review of the state conviction must make the determination set forth in *Jackson v. Virginia:*

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

*United States v. Spring,* 80 F.3d 1450 (10th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct.

385, 136 L.Ed.2d 302 (1996); *Messer v. Roberts,* 74 F.3d 1009 (10th Cir.1996); *Bowser v. Boggs,* 20 F.3d 1060 (10th Cir.) *cert. denied,* 513 U.S. 926, 115 S.Ct. 313, 130 L.Ed.2d 275 (1994); *Cordoba v. Hanrahan,* 910 F.2d 691, 694 (10th Cir.), *cert. denied,* 498 U.S. 1014, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990).

This review is "sharply limited" in that a court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wright v. West,* at 296–97, 112 S.Ct. at 2492–93, *citing Jackson,* 443 U.S. at 326, 99 S.Ct. at 2792. This now familiar standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson* at 319, 99 S.Ct. at 2789; *Herrera v. Collins,* 506 U.S. 390, 401–02, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993); *see also, Kelly* at 808; *Grubbs v. Hannigan,* 982 F.2d 1483, 1487 (10th Cir. 1993). Once a defendant has been found guilty, "the factfinder's role as weigher of the evidence is preserved" through the presumption that "upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." *Jackson* at 319, 99 S.Ct. at 2789. "[T]his inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Herrera* at 401, 113 S.Ct. at 861, and "does not permit a court to make its own subjective determination of guilt or innocence." *Wright,* 505 U.S., at 320 FN13, 99 S.Ct., at 2789 FN13. Rather, the court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Kelly* at 808; *Grubbs* at 1487; *Messer* at 1013. However, "[t]o be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Kelly* at 808.

██ A sufficiency of the evidence claim can almost always be judged on the written record without need for an evidentiary hearing in the federal habeas court. *Jackson* at

322, 99 S.Ct. at 2791. The *Jackson* standard must be applied with explicit reference to the substantive elements of the criminal defense as defined by state law. *Jackson,* 443 U.S. at 324 FN16, 99 S.Ct. at 2792 FN16; *Kelly* at 808.

DISCUSSION

Wimberly was convicted of first degree murder under the Kansas felony murder statute, K.S.A. § 21–3401, which defined murder in the first degree as the killing of a human being committed maliciously, willfully, deliberately, and with premeditation or committed in the perpetration or attempt to perpetrate any felony. The underlying felony of robbery is the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force, K.S.A. 21–3426, and becomes aggravated robbery where the robbery is committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery. K.S.A. 21–3427. The jury was instructed that in order to establish the crime of first degree murder as charged, the State had to prove that Wimberly killed Sarah M. Woody and that such killing was done while in the commission of aggravated robbery. Further, the jury was instructed that the elements of aggravated robbery were that Wimberly intentionally took property from the person of Mrs. Woody, that the taking was by force or threat of bodily harm, and that he either inflicted bodily harm on any person in the course of such conduct or was armed with a dangerous weapon. (Trial, Instruction 1). The State was required to prove its claims so that the jury had no reasonable doubt as to their truth. (Trial, Instruction 2).

Kansas law does not allow a jury to find an element of a crime from inferences based only on inferences. *Kelly* at 809, *citing State v. Burton,* 235 Kan. 472, 681 P.2d 646, 651 (1984) ("... presumptions and inferences may be drawn only from facts established and presumption may not rest upon presumption or inference on inference."). The jury "may draw reasonable inferences from direct or circumstantial evidence," but the

inferences "must be more than speculation and conjecture to be reasonable." *United States v. Jones,* 44 F.3d 860, 864 (10th Cir. 1995); *Spring* at 1459.

█ On direct appeal, the Kansas Supreme Court carefully stated the requirements for conviction under Kansas law, discussed the facts and employed the proper *Jackson* standard in its analysis. The court ruled that the evidence was sufficient to convict Wimberly of first degree murder beyond a reasonable doubt. Our own review of the record in the light most favorable to the prosecution convinces us that a rational factfinder could have found the petitioner guilty beyond a reasonable doubt of first-degree murder under Kansas law.

This court has thoroughly reviewed the state court records including the trial transcript and finds that, as noted by the Kansas Supreme Court, the evidence against Wimberly was "predominantly circumstantial." The court further finds that there was no question at the trial that Mrs. Woody had been intentionally murdered, and it did not seem to be seriously questioned that robbery was motive for the murder. The crucial factual dispute went to the sufficiency of the evidence to support a finding that Wimberly was the perpetrator. The court concludes from the fingerprint evidence and the circumstantial corroborating evidence in the record, that it is clear that the jury could reasonably have found beyond a reasonable doubt that petitioner did commit the felony murder of Mrs. Woody.

The prosecution's evidence against Wimberly and inferences which could reasonably be drawn therefrom, viewed favorably to the prosecution, included that Mrs. Woody had withdrawn $500 from a savings account on the afternoon of her murder which was not found at the scene or accounted for, and Mrs. Woody's body was found in her parked vehicle along with her purse, billfold and some contents which were strewn about. From these facts, a juror could reasonably believe that Mrs. Woody was robbed. Mrs. Woody was shot repeatedly at close range and killed with a large caliber weapon, clear evidence of force or other aggravated circumstances such as infliction of bodily harm and use of a deadly weapon. A large caliber weapon had been seen in Wimberly's car about a year prior to the Woody murder. Evidence placed Wimberly within a block of where the murder victim was found on the date the murder occurred. Six close friends of Mr. and Mrs. Woody testified that they had never heard Mrs. Woody mention Wimberly and had never seen him in her company. And, certainly most damning, Wimberly's fingerprints were found on four items in the vehicle including two of the victim's receipts which police recovered from inside Mrs. Woody's billfold.

The defense attempted to show through their evidence and cross-examination that the time of day the $500 was withdrawn was not established; that Mrs. Woody had been shopping that day; that the youthful witness who testified he saw a gun in Wimberly's car was not credible; that other fingerprints had been found in Woody's vehicle which had not been identified; that Hallmark employees in a parking lot a block from the crime scene on the evening of the murder had seen three Hispanic or Caucasian people listening to a police scanner or CB radio and one employee thought one of these persons had said "they haven't found her yet;" that while Wimberly is black, unidentified hairs found in Mrs. Woody's vehicle were Caucasian; and the fingerprint experts testified that there was no way to determine when the fingerprints were placed on the items in Woody's car since fingerprints can endure on such materials for as long as thirty-five years.

As the U.S. Supreme Court has noted, "fingerprinting is an inherently more reliable and effective crime solving mechanism that other types of evidence such as lineups and confessions." *Hayes v. Florida,* 470 U.S. 811, 814, 105 S.Ct. 1643, 1646, 84 L.Ed.2d 705 (1985). The California Supreme Court has "repeatedly emphasized that fingerprints are the strongest evidence of identity and ordinarily are sufficient by themselves to identify the perpetrator of the crime." *People v. Figueroa,* 2 Cal.App.4th 1584, 4 Cal.Rptr.2d 40 (2d Dist.1992) (and cases cited therein). On the other hand, some courts have suggested that "standing by itself, [fingerprint evidence] would be insufficient to support a

conviction." *Spring,* 80 F.3d at 1459 [*citing United States v. Milano,* 443 F.2d 1022, 1025 (10th Cir.) (fingerprints found on brown paper bag insufficient evidence but for ample additional evidence), *cert. denied,* 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 258 (1971); *see also Mikes v. Borg,* 947 F.2d 353, 356–57 (9th Cir.1991) ("[I]n fingerprint-only cases in which the prosecution's theory is based on the premise that the defendant handled certain objects while committing the crime in question, the record must contain sufficient evidence from which the trier of fact could reasonably infer that the fingerprints were in fact impressed at that time and not at some earlier date."), *cert. denied,* 505 U.S. 1229, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992); *United States v. Corso,* 439 F.2d 956, 957 (4th Cir.1971) ("The probative value of an accused's fingerprints upon a readily movable object is highly questionable, unless it can be shown that such prints could have been impressed only during the commission of the crime."); *United States v. Collon,* 426 F.2d 939, 942 (6th Cir.1970) ]; *but cf. U.S. v. Burgos,* 94 F.3d 849 (4th Cir.1996) *cert. denied,* —— U.S. ——, 117 S.Ct. 1087, 137 L.Ed.2d 221, 65 USLW 3586 (1997).

Petitioner had no duty to explain the presence of his fingerprints, and was under no obligation to present any inferences from the fingerprint evidence that were consistent with his innocence. *Mikes* at 359. On the other hand, "the prosecution need not affirmatively 'rule out every hypothesis except that of guilt'." *Wright v. West* at 296, 112 S.Ct. at 2492 (citing *Jackson* at 324, 99 S.Ct. at 2792).

Petitioner cites *Mikes* in support of his claim. *Mikes* is distinguishable in that it was a case which "rested exclusively" upon fingerprint evidence: none of Mikes' prints were found anywhere on the premises other than on three posts, one of which was used as the murder weapon; the posts, which had been purchased at a hardware store, were not shown to have been inaccessible to the defendant prior to the time of the commission of the crime; and the prosecution introduced no evidence placing the defendant at the scene of the crime on the day of the murder. *Mikes* cited and relied upon an even earlier fingerprint case, *Borum v. United States,* 380 F.2d 595 (D.C.Cir.1967). *Borum* is also distinguishable since in that case the court found that the Government relied upon fingerprint evidence alone, and there was no evidence that the objects on which the defendant's prints were found at the scene were "generally inaccessible" to him and therefore probably touched during the commission of the crime.

This is not a case where there was no evidence, direct or circumstantial, linking the fingerprints to the commission of the crime. *See Milano* at 1026–1027; *see also Taylor v. Stainer,* 31 F.3d 907 (9th Cir.1994); *Gibson v. Collins,* 947 F.2d 780, 785 (1991). Here, there was evidence that petitioner was within a block of the crime scene on the day of the murder and that the victim's property on which petitioner's prints were found was generally inaccessible to petitioner prior to the day of the murder. The two receipts found in the victim's billfold are items which were particularly inaccessible to the general public including petitioner. Thus, a reasonable juror could conclude that petitioner's fingerprints were placed on the receipts at the time the robbery was committed and not earlier. Such a conclusion is not unreasonably speculative. This circumstantial evidence is sufficient to support the jury's verdict. Thus, this Court holds on the basis of the state record, that a rational factfinder could have concluded beyond a reasonable doubt that Wimberly's fingerprints were placed on the receipts and other items in the victim's car at the time of the commission of the crime. We therefore hold that Wimberly has failed to meet the "difficult burden" of proving that the evidence was insufficient, *see Spring* at 1459.

For all the foregoing reasons, the court finds that no grounds are presented which would entitle petitioner to federal habeas corpus relief.

IT IS THEREFORE BY THE COURT ORDERED THAT this action be dismissed and all relief denied.