**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 16 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ORMOND LEE WIMBERLY, JR.,

Petitioner-Appellant,

v.

DAVE MCKUNE and CARLA
STOVALL, Attorney General,

Respondents-Appellees.

No. 97-3133
(D.C. No. 94-CV-3201)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BALDOCK**, **EBEL**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore

ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Ormond Lee Wimberly, Jr. was convicted in Kansas state court of first-degree murder. Proceeding pro se, he now appeals from the district court's order dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## BACKGROUND

The body of the victim, Sarah Woody, was found early June 17, 1981, in the rear seat of her car, which was parked in a lot in downtown Topeka, Kansas. Ms. Woody had been shot five times at close range in the afternoon or early evening of June 16. The case remained unsolved until 1987, when the petitioner was charged with felony murder. After a trial, held in August 1988, the jury returned a guilty verdict. Petitioner filed an unsuccessful appeal to the Kansas Supreme Court, contending, among other things, that the evidence was insufficient to support his conviction. See State v. Wimberly, 787 P.2d 729, 734-35 (Kan. 1990).[1] Thereafter, with a different attorney, he requested state post-conviction relief, pursuant to Kan. Stat. Ann. § 60-1507, alleging that he had received ineffective assistance of counsel because his trial attorneys had coerced him into giving up the right to testify on his own behalf. The state court

---

[1] Petitioner also appealed the trial court's use of a prior conviction by military court martial to enhance his sentence under the Kansas Habitual Criminal Act, see Kan. Stat. Ann. § 21-4504(a). The supreme court agreed and vacated the additional sentence. See Wimberly, 787 P.2d at 737-38.

-2-

conducted an evidentiary hearing, at which trial counsel and petitioner testified, and then denied relief. The Kansas Court of Appeals affirmed the decision.

Subsequently, petitioner sought habeas corpus relief in federal district court, raising the claims of insufficiency of the evidence and ineffective assistance of counsel. In a well-reasoned memorandum order, the district court summarized the applicable law; reviewed the state court record, including the transcript of the post-conviction hearing; and determined that petitioner had presented no grounds entitling him to relief. See Wimberly v. McKune, 963 F. Supp. 1016 (D. Kan. 1997). The court granted a certificate of appealability on June 6, 1997, which we construe as a certificate of probable cause.[2]

## DISCUSSION

Petitioner's claims present mixed questions of fact and law to be reviewed de novo in a federal habeas proceeding. See Duvall v. Reynolds, No. 96-6329, 1998 WL 97748, *4 (10th Cir. Mar. 4, 1998) (ineffective assistance of counsel); Maes v. Thomas, 46 F.3d 979, 988 (10th Cir.1995) (insufficiency of evidence).

---

[2] Because the petition in this case was filed prior to April 24, 1996, petitioner is not subject to the requirement of a certificate of appealability in 28 U.S.C. § 2253(c), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), see Lindh v. Murphy, 117 S. Ct. 2059, 2068 (1997); United States v. Kunzman, 125 F.3d 1363, 1364 n.2 (10th Cir. 1997) (en banc), petition for cert. filed, (U.S. Feb. 14, 1998) (No. 97-8055), but he is subject to § 2253's previous requirement of a certificate of probable cause.

However, we apply a presumption of correctness to underlying findings of fact made by the state court. See Castro v. Ward, No. 97-6179, slip op. at 5 (10th Cir. Feb. 18, 1998).[3]

## I.      Sufficiency of the Evidence

In our review of a claim challenging the sufficiency of evidence, we determine "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)), cert. denied, 66 U.S.L.W. 3474 (U.S. Mar. 9, 1998) (No. 97-1140), looking to state law for the "substantive elements" of the relevant criminal offense, id. (quoting Jackson, 443 U.S. at 324 n.16). "This standard 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Id. (quoting Jackson, 443 U.S. at 319). We note that "Kansas law does not allow a jury to find an element of a crime from inferences based

---

[3]      Castro, 1998 WL 65398 at *2, discusses the presumption of correctness applicable to cases, such as this one, to which AEDPA does not apply. See Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997) (while revised § 2254(e), like pre-AEDPA law, affords deference to state court factual findings, it goes further and requires habeas petitioner to rebut presumption with clear and convincing evidence).

only on inferences." Kelly v. Roberts, 998 F.2d 802, 809 (10th Cir. 1993) (citing State v. Burton, 681 P.2d 646, 651 (Kan. 1984)).

The record in this case contains sufficient evidence to sustain a felony murder conviction, under Kansas law, based on the commission of an aggravated robbery[4] resulting in the death of Ms. Woody.[5] The prosecution presented evidence at trial tending to show that an aggravated robbery had taken place: (1) Ms. Woody's death by gunshot; (2) the finding of her purse behind the passenger seat in her car with the billfold and other contents strewn about the right rear floorboard; and (3) the absence of money in her car, though she had cashed a $500.00 check on the day of her death.

"Predominately circumstantial" evidence linked petitioner to the crime. Wimberly v. McKune, 963 F. Supp. at 1027 (quoting State v. Wimberly, 787 P.2d at 733). Experts in fingerprinting testified that petitioner's prints were on receipts, dated January 10, and May 6, 1981, found inside Ms. Woody's billfold, and also on a shoebox and tissue package found in the front seat. Six of Mrs. Woody's close friends were called to state that they had never seen petitioner in

---

[4]     "Aggravated robbery is a robbery . . . committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery."  Kan. Stat. Ann. § 21-3427.

[5]     "Murder in the first degree is the killing of a human being committed:  . . . in the commission of, attempt to commit, or flight from an inherently dangerous felony [such as aggravated robbery]."  Kan. Stat. Ann. § 21-3401.

her company or heard her speak of him. A witness testified that he had seen a handgun in petitioner's car about a year earlier. Finally, a witness who worked near the crime scene testified that petitioner had been in the witness's office on the day of Ms. Woody's death. Petitioner did not testify.[6]

As the district court properly concluded, "[t]his circumstantial evidence is sufficient to support the jury's verdict," in that "a rational factfinder could have concluded beyond a reasonable doubt that Wimberly's fingerprints were placed on the receipts and other items in the victim's car at the time of the commission of the crime." Wimberly v. McKune, 963 F. Supp. at 1028. Contrary to petitioner's argument, the holding of the Ninth Circuit Court of Appeals in Mikes v. Borg, 947 F.2d 353, 361 (9th Cir. 1991) does not affect the analysis.

In that case, which "rested exclusively" on evidence that defendant's prints were among those found on the post used as the murder weapon, id. at 355, the court held that "the record must contain sufficient evidence to permit a jury, applying the beyond a reasonable doubt standard, to draw the inference that the defendant touched the object during the commission of the crime," id. at 361. Here, petitioner's prints showed that he had handled items of the victim's

---

[6] During the defense case, petitioner's counsel attempted to undercut testimony concerning the fingerprint evidence and petitioner's possession of a handgun. He also presented witnesses who reported seeing other suspicious individuals near Ms. Woody's car.

property which were highly unlikely to have been available to him before the robbery. Moreover, there was additional corroborating evidence of his involvement.

## II.   Ineffective assistance of counsel

Petitioner also claims that his trial counsel coerced him into waiving his right to testify and thus provided him with ineffective assistance of counsel. "The Supreme Court has recognized that the Constitution protects a defendant's right to testify on his own behalf at a criminal trial as 'essential to due process of law in a fair adversary process.'" United States v. Ruiz-Castro, 92 F.3d 1519, 1529 (10th Cir. 1996) (quoting Rock v. Arkansas, 483 U.S. 44, 51 (1987)) (additional quotation omitted). The defendant, not counsel, makes the decision whether or not to testify. See United States v. Janoe, 720 F.2d 1156, 1161 & n.10 (10th Cir. 1983). "Because defense counsel is primarily responsible for advising the defendant of his right to testify . . . the appropriate vehicle for claims alleging that defense counsel violated [this right] is a claim of ineffective assistance of counsel." United States v. Camacho, 40 F.3d 349, 355 (11th Cir. 1994) (citing United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992)).

To establish ineffective assistance of counsel, petitioner first "must show that his trial counsel committed serious errors in light of 'prevailing professional norms'" such that his legal representation fell below an objective standard of

reasonableness.  United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993)

(quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)).[7]  In drawing the

"difficult line . . . between earnest counseling and [the] overt coercion" which

amounts to ineffective assistance, courts consider:

> (1) whether the defendant knew about his constitutional right to
> testify, and if not, whether he was informed by counsel; (2) the
> competence and soundness of defense counsel's tactical advice, i.e.,
> whether counsel presents the defendant with sufficient information to
> permit a meaningful voluntary waiver of the right to testify; and (3)
> any intimidation or threatened retaliation by counsel relating to the
> defendant's testimonial decision.

Lema v. United States, 987 F.2d 48, 52-53 (1st Cir. 1993) (citations omitted).

Petitioner, who has a degree in criminal justice and has been a defendant in

two prior criminal trials, testified at the state post-conviction hearing that counsel

did not inform him that he had the right to testify and that he was not otherwise

aware of the right.  He described a heated discussion at the close of the

prosecution's case, during which he insisted on testifying so that he could tell the

jury he was not guilty.  With at least equal vehemence, counsel advanced the

---

[7]     A petitioner making an ineffective assistance claim must also show that the
deficient performance was so prejudicial that he was deprived of a fair trial with a
reliable result.  Sellers v. Ward,  No. 97-6062, 1998 WL 45181, *12 (10th Cir.
Feb. 4, 1998) (citing Strickland, 466 U.S. at 687)).  Courts may address the
performance and prejudice components in any order but need not address both if a
petitioner fails to make a sufficient showing on  one. Id. (citing Strickland, 466
U.S. at 697).

tactical reasons for petitioner's remaining silent and advised against testifying. The conversation lasted approximately an hour and a half, and, at the end, petitioner told counsel to "[g]o ahead and do what you want to do." Hr'g Tr. at 62.

Plaintiff's chief trial attorney testified at the post-conviction hearing that it was his "practice in all cases to explain to [clients] that it is their choice whether or not to testify," although he did not specifically recall providing this explanation to petitioner. Id. at 18. Counsel assumed that petitioner knew of his right to testify "based on [their] entire relationship," during which he treated petitioner as an active member of the defense team. Id. at 38-39. Counsel's testimony on the attorney-client argument was similar to petitioner's. He described raising his voice in an effort "to help [petitioner] understand intellectually . . . how his emotional desire to testify may not be the best trial tactic," id. at 21, and explain why "his case was stronger without his testimony," id. at 24. By the end of the discussion, counsel felt that petitioner had accepted his logic and advice. See id. at 29.

Applying the three relevant factors listed in Lema, 987 F.2d 52-53, we conclude that petitioner has not met his burden of showing constitutionally deficient performance. First, we find substantial support in the record for the state court's finding that petitioner understood his right to testify: counsel's usual

practice of advising his clients; petitioner's education and experience in the criminal justice system; and petitioner's participation in defense strategy decisions. See also Lema, 987 F.2d at 53 (noting that the "apparent vehemence with which [petitioner] at first insisted on testifying, as evidenced by his argument with [counsel], fairly may have reflected [petitioner's] clear awareness that the ultimate decision was his to make").

As to the second factor, concerning the sufficiency of defense counsel's tactical advice, the testimony establishes that counsel offered extensive information on legitimate reasons for waiving the right to testify. Finally, the record discloses no intimidation or threatened retaliation by counsel relating to the defendant's testimonial decision. Petitioner's admitted, albeit reluctant, agreement with counsel's advice supports a finding that counsel did not coerce petitioner into waiving his rights. Cf. Nichols v. Butler, 953 F.2d 1550, 1553 (11th Cir. 1992) (finding coercion where counsel, in an effort to persuade defendant to waive testimonial right, threatened to withdraw during trial). Accordingly, we determine that counsel's performance was not constitutionally deficient.

**CONCLUSION**

The judgment of the United States District Court for the District of Kansas is AFFIRMED.  The mandate shall issue forthwith.

Entered for the Court


David M. Ebel
Circuit Judge